175 N.J. Super. 353 (1980)
418 A.2d 1293
DONALD REIMAN, CHAIRMAN OF THE BERGEN COUNTY CONFERENCE OF POLICE; EDWARD STEMPENSKI, AND ROBERT KEANE, INDIVIDUALLY AND ON BEHALF OF THE CLASS OF ALL OTHER POLICE OFFICERS SIMILARLY SITUATED WITHIN BERGEN COUNTY, PLAINTIFFS-APPELLANTS,
v.
ROGER W. BRESLIN, JR., PROSECUTOR OF BERGEN COUNTY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 1980.
Decided July 8, 1980.
*354 Before Judges MATTHEWS, ARD and POLOW.
*355 Barbara Landau argued the cause for appellants (Osterweil, Wind & Loccke, attorneys; Edward R. Schutzer of counsel and on the brief).
Roger W. Breslin, Jr., Bergen County Prosecutor, argued the cause for respondent, pro se.
PER CURIAM.
Plaintiffs, police officers in Bergen County, instituted this class action challenging the validity of the Bergen County Prosecutor's practice of issuing "on call" subpoenas which are valid for three weeks or until the subpoenaed officer has testified and been discharged. The assignment judge granted summary judgment to the prosecutor and plaintiffs appeal.
The prosecutor's office has been encountering the problem of police officers failing to appear for trial when their testimony was required. The problem approached serious dimensions in early 1974, and in response thereto the then prosecutor met with the assignment judge and the Bergen County Police Chiefs Association in late 1974 and developed a system for notifying police witnesses of upcoming trials. The plan required the prosecutor's office to notify the police chief of the particular police department involved of its desire to use the testimony of one of the officers. Attached thereto was a subpoena which the chief was required to serve. In addition, the chief had to appoint a liaison officer, who was responsible for producing the subpoenaed officer at the time and place stated in the subpoena. Provisions were made for informing the prosecutor with respect to problems in honoring the subpoena, obtaining information concerning the status of the calendar and notifying all police witnesses of "first-out" and "back-up" cases which required a Monday court appearance.
After the procedure had been in effect for ten months it became apparent that this plan was not effective in dealing with the problem sought to be resolved since the police officers frequently insisted that the subpoena did not require them to be available beyond the date set forth in the subpoena. Thus, *356 whenever a case listed for trial on the return date was carried on a day-to-day basis or carried over to the next week, many officers believed they were under no obligation to appear when the case was finally assigned for trial.
To avoid any misunderstanding, the prosecutor supplemented this system with the issuance of three-week, on-call subpoenas. Under such a subpoena the subpoenaed officer was compelled to appear at the Bergen County Courthouse at 9 a.m. on a specified date. The subpoena was marked valid for three weeks or until discharged. Although the officer did not necessarily have to report to the court on the date stated on the subpoena, he was put on notice that he was obligated to appear if the trial were rescheduled within the next three weeks. After that period the prosecutor would issue a new subpoena when a new trial date was scheduled. Following the adoption of the on-call subpoena system, the problem of police witnesses failing to appear for trial when their testimony was required was in large part eliminated.
Plaintiffs challenge the authority of the prosecutor to require them to remain on-call beyond the date set forth in the subpoena. In addition they contend that if we determine that the prosecutor can properly issue on-call subpoenas, they should be reasonably compensated for the time in which they are on-call but not otherwise on duty. Although the assignment judge rejected plaintiffs' arguments, he instructed the prosecutor to reword the on-call portion of the subpoena to avoid any ambiguity as to the time period in which the subpoena remained in effect. In its present form, the on-call subpoena is valid for "three weeks commencing ____ unless you are discharged."
To be valid, a subpoena must be issued pursuant to constitutional and legislative authority. Newark v. Benjamin, 144 N.J. Super. 58, 72 (Ch.Div. 1976), aff'd o.b. 144 N.J. Super. 389 (App.Div. 1976), aff'd o.b. 75 N.J. 311 (1978). The prosecutor relies on R. 1:9-1 and the contempt provisions of N.J.S.A. 2A:81-15 as authority for issuing three-week, on-call subpoenas on police witnesses.
*357 Pursuant to the rule-making provisions of N.J.Const. (1947), Art. VI, § II, par. 3, the Supreme Court adopted R. 1:9-1, which provides:
[a] subpoena may be issued by the clerk of the court or by an attorney or party in the name of the clerk .. . It shall state the name of the court and the title of the action and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. [Emphasis supplied]
It is undisputed that the prosecutor can issue a subpoena in the name of the clerk to compel plaintiffs to appear in court or on a specified date. What the police challenge here is the authority of the prosecutor to use the court's contempt powers, N.J.S.A. 2A:81-15, to compel them to remain on-call beyond the date set forth in the subpoena. Plaintiffs argue that only the courts have the authority to extend the time in which a witness remains subject to a subpoena. They interpret the words "directed to attend and give testimony at the time and place specified therein" in R. 1:9-1 to support their argument.
There is no New Jersey decision defining the scope of the rule's requirement of attending and giving testimony at the time stated on this subpoena, nor have our courts addressed the issue of the legality of on-call subpoenas.
Is is the public duty of every person within the jurisdiction of the government to appear in court when commanded to testify. United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). This obligation is an incident to citizenship which cannot be ignored by one who believes that his time should be spent on better things, no matter what his profession may be. Di Palma v. Wiesen, 163 Conn. 293, 303 A.2d 709, 711 (Sup.Ct.Err. 1972). Once subpoenaed, a witness is compelled to remain in attendance until excused by the court or by the party who has summoned him. Blackmer v. United States, 284 U.S. 421, 443, 52 S.Ct. 252, 257, 76 L.Ed. 375 (1932); 97 C.J.S. Witnesses § 20 at 371.
In delineating the scope of one's obligation under a subpoena, the United States Supreme Court determined that a *358 subpoena need only require the person's attendance "at the time and place stated." Blackmer v. United States, above, 284 U.S. at 442, 52 S.Ct. at 257. It rejected the petitioner's contention that he could not be adjudicated in contempt of court because the subpoena had required his attendance on a specified date and the case was carried for one week. 284 U.S. at 443, 52 S.Ct. at 257. A person is subject to a subpoena even if his appearance is required beyond the date set forth on the face of the subpoena.
An on-call subpoena was indirectly challenged on an appeal from a judgment finding appellant guilty of contempt in United States v. Snyder, 413 F.2d 288 (9 Cir.1969), cert. den. 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 (1969). Snyder was served with a subpoena calling for his appearance on February 20, 1968. However, arrangements were made to allow him to remain on-call and not have to appear in court on the date specified on the subpoena. On March 14 the Assistant United States Attorney sent Snyder a telegram requesting his appearance on April 9. Appellant never appeared that day or any other date to which the case was continued. The court held that Snyder had a continuing duty to respond to the subpoena notwithstanding the fact that the prosecutor had transformed a conventional subpoena into an on-call subpoena. 413 F.2d at 289. His conviction was affirmed since he had violated an order of court, not of the United States Attorney.
An attempt was made in Snyder to distinguish Blackmer on the basis of the rule being construed. In 1932 a person served with a subpoena was statutorily required to attend and "not to depart the court without leave thereof, or of the district attorney."[1] This statute was superseded by Federal Rule of Criminal Procedure 17 which did not incorporate the aforementioned statutory language. It simply provides:

*359 (a) A subpoena ... shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. ...
(g) Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued .... [Emphasis supplied]
Nevertheless, the court did not interpret the failure to include the prior language in the new rule as an intent by Congress to limit the efficacy of a subpoena. 413 F.2d at 289. It cited the Supreme Court's recognition in United States v. Bryan, above, of the necessity and validity of the legal theory underlying Blackmer and the subpoena's practical importance to the administration of justice in support of its conclusion. United States v. Snyder, above, 413 F.2d at 290.
Federal Rule of Criminal Procedure 17(a) and (g) has an identical civil counterpart in Federal Rule of Civil Procedure 45(a) and (f). These federal rules are similar to R. 1:9-1 and N.J.S.A. 2A:81-15[2] which set forth the authority for issuing and enforcing subpoenas in New Jersey. Since our rules are indirectly based upon the federal rules, we can reasonably adopt the interpretation given to the latter by the court in Snyder and conclude that a subpoena issued in New Jersey creates a continuing obligation which cannot be satisfied until the person is released from it. In re Grand Jury Subpoenas, 363 So.2d 651, 655 (La.Sup. 1978).
The District of Columbia Court of Appeals also indirectly upheld an on-call subpoena in In re Ragland, 343 A.2d 558 (1975). There, a subpoena was issued commanding appellant to appear as a witness for the United States in the District of Columbia Superior Court on February 11, 1974. A United States attorney informed Ragland on January 22 that it was *360 unnecessary for her to travel to Washington from Philadelphia on the date stated on the subpoena. Instead, appellant was told to remain on-call and that she would be informed by the prosecutor via telephone of the exact date and time her testimony would be required. In early March the United States attorney notified Ragland of the necessity of her appearing to testify on March 12, 1974. She failed to appear on that date. Notwithstanding the on-call aspect of the subpoena, the court held that the subpoena created a continuing duty on the appellant to appear in court when requested and she could not be released from that obligation unless the court so directed. 343 A.2d at 559. It did not matter that the United States attorney did not specifically state that the subpoena had been continued by court order since, once issued, the subpoena was an order of the court. A violation thereof was deemed a contempt of court.
Likewise, the Alabama Supreme Court held that the failure to appear as a witness pursuant to an on-call subpoena was punishable as a contempt of court. In re Tarpley, 293 Ala. 137, 300 So.2d 409, 410 (1974). A doctor was subpoenaed to appear in court on June 11, 1973 and "to continue from day to day thereafter until discharged." Pursuant to an agreement between the local bar and medical associations, the doctor was to be informed in advance of trial as to the status of the calendar so that he could be precisely informed when his testimony was needed. On June 12 the party who had subpoenaed Tarpley telephoned the doctor requesting him to testify on June 12, 1973 at 9 a.m. Tarpley asked him if he could come at 1:30 instead, and the party agreed. Appellant failed to appear and the court affirmed his conviction for willfully disobeying an order of the court.
These cases make it clear that a separate court order is not needed to extend the efficacy of a subpoena beyond the date stated on the face of the subpoena. It is proper for the prosecutor to have used the power of a subpoena to require the policemen to remain on-call and be available to testify when the *361 case he was involved in was listed for trial as a "first-out and back-up" case.
There is one case which has said that where a subpoena is issued for a court appearance on a specific date and the case does not proceed to trial on that day, it is incumbent on the party desiring the presence of the witness to move for the entry of an appropriate order to direct the witness to return at a later date or to continue the subpoena in effect on some reasonable basis. O'Brien v. Walker, 49 Ill. App.3d 940, 7 Ill.Dec. 372, 378, 364 N.E.2d 533, 539 (App.Ct. 1977). There, the court was concerned about a situation where the person subpoenaed was obligated to respect the court order but did not know when his appearance was in fact required. Although the directives are framed in terms of obtaining an appropriate order, defendant's on-call subpoena is a reasonable solution to the problem the Illinois Appellate Court was addressing. Nonetheless, the weight of authority is to the contrary, and the court in O'Brien does not attempt to distinguish those cases nor does it even given any support for its statement.
Snyder, Ragland and Tarpley all involve lay persons who were subject to on-call subpoenas. The prosecutor contends, and the trial court found as a fact, that the three week on-call subpoena applied to both law enforcement and non-law enforcement witnesses. However, we need only address ourselves to the propriety of on-call subpoenas being served on policemen since they have instituted this action challenging the prosecutor's authority.
In addition to the reasons stated in Snyder, Ragland and Tarpley, there is a more compelling reason to uphold the validity of on-call subpoenas when applied to law enforcement witnesses. As members of our criminal justice system, police officers have a special relationship with prosecutors in their joint effort to enforce the laws of this State. Plaintiffs are not wholly free of their responsibilities, even in off-duty periods. Jamesburg v. Hubbs, 18 N.J. Super. 5, 9 (App.Div. 1952). They must report the commission of any crimes, divulge any information when requested *362 by their superior officers and return to duty in an emergency. Ward v. Keenan, 3 N.J. 298, 310-311 (1949). In fact, our statutes specifically provide for situations in which police officers are required to work during their off hours in cases of emergency, N.J.S.A. 40A:14-132, 133 and 134, and are compelled to testify in any noncivil Superior Court proceeding when they are not otherwise assigned for duty, N.J.S.A. 40A:14-135.
Although defendant does not have a constitutional right to compulsory process, In re Farber, 78 N.J. 259, 273-274 (1978), cert. den. 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), he is given the power to subpoena witnesses in prosecuting suspects on behalf of the State. R. 1:9-1. The prosecutor is a legal officer of the State who represents both the State and county. State v. Detroit Motors, 62 N.J. Super. 386, 391 (Law Div. 1960). He is also a law enforcement officer, like plaintiffs, with a duty in seeing that the innocent are protected, that the laws are enforced, that persons guilty of violations of the law are punished and that justice is done. In furtherance of his duty the prosecutor must use "all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." N.J.S.A. 2A:158-5; State v. Winne, 12 N.J. 152, 172 (1953). Thus, defendant is legally obligated to subpoena witnesses in the performance of his duties as a county prosecutor.
Plaintiffs not only challenge the authority of the prosecutor to issue on-call subpoenas, but they also question the legality of the procedure. Specifically, the police contend that the requirements of having to remain on-call for a three-week period of time unconstitutionally infringes upon their right to travel.
In Shapiro v. Thompson, 394 U.S. 618, 629, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969), the Supreme Court reaffirmed the right of "all citizens [to] be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." (Emphasis supplied). Although the court has never had the occasion *363 to ascribe the source of this right to travel interstate to a particular constitutional provision, it nonetheless recognized it to be fundamental to the concept of our federal union. 394 U.S. at 630, 89 S.Ct. at 1329. However, this right to travel has never been applied to restrictions on a person's temporary movements, such as one's desire to take a vacation. It has usually been applied to restrictions of a more permanent nature, such as one's desire to move to another state. E.g., 394 U.S. at 638, 89 S.Ct. at 1333 (three states' statutes which imposed a one-year waiting period requirement before anyone may become eligible for welfare assistance unconstitutionally violated a person's right to travel).
Notwithstanding the limited scope of the right to travel, we do not regard the three-week, on-call subpoena to be an unreasonable burden or restriction on a person's movement. The subpoenas were only issued after alternative procedures failed to eliminate the problem of policemen refusing to appear for trial when their testimony was required. The record discloses here that there are normally about 50 ready cases scheduled for trial every Monday, but only five judges available to hear criminal matters. Consequently, many cases were carried into the succeeding week(s) and the policemen felt that they were no longer obligated to testify pursuant to the subpoena served on them. The issuance of on-call subpoenas has in large part eliminated the problem. We are informed that this procedure is presently being used by other county prosecutors in the State, and the system has been given the consent of the court. The National Institute of Law Enforcement and Criminal Justice and the National District Attorneys Association have called the on-call telephone alert aspect of defendant's procedure "the single most productive function which a [p]rosecutor can provide in the witness service area."
Although the duty to appear and testify when duly subpoenaed is at times onerous, it is but one of the many personal sacrifices a person must make as part of his necessary contribution *364 to the welfare of society. State v. Hand, 101 N.J. Super. 43, 51 (Cty.Ct. 1968). Thus the issue is not whether a person has been inconvenienced but whether the prosecutor has reasonably exercised his authority in fulfilling his statutory obligation to convict violators of the law. N.J.S.A. 2A:158-5; State v. Winne, above, 12 N.J. at 152.
Notwithstanding the purpose defendant had in implementing the present system, on-call subpoenas were not developed solely to provide prosecutors with another mechanism to compel witnesses to testify on behalf of the State. There was a concern over the intolerable burden subpoenas imposed on both the trial courts and the witnesses when the case was continued to a later date. United States v. Snyder, above, 413 F.2d at 290. State courts have tended to emphasize the inconvenience persons subpoenaed have encountered when their testimony was not needed on the date specified on the subpoena. In re Ragland, above, 343 A.2d at 559-560; In re Tarpley, above, 300 So.2d at 412. The on-call subpoena minimizes the burden by not requiring the witness to be in court when his appearance is not needed. Instead, he is allowed to remain at home or work, subject to the requirement of keeping in touch with the prosecutor's office to determine when the case has been rescheduled and/or when his testimony is needed.
As was previously stated, a subpoena in its traditional form does not have a specified termination date-it is valid until the person is dismissed by the court or by the person who had subpoenaed him. The on-call subpoena in issue has a three-week life span which may be shorter if the witness is discharged sooner. Afterwards, the prosecutor has to issue another subpoena setting forth the rescheduled trial date in which his appearance is needed. Twenty-one days is an entirely reasonable period of time to require the policemen to remain on call, especially when compared to the open-ended, on-call subpoenas upheld in United States v. Snyder and In re Ragland which ultimately remained in effect for 45 and 49 days, respectively.
*365 Defendant's on-call subpoena minimizes rather than increases the inconvenience to plaintiffs. The only alternative to the present system would be to have all policemen subpoenaed appear at the calendar call each Monday morning in the courtroom of the criminal assignment judge. Those witnesses involved in the majority of the cases not immediately assigned for trial would be instructed by the court to either wait, return to their home subject to a continued date of return in response to the subpoena already served, or be excused from responding to the instant subpoena and be subject to the issuance of a new one in the future. Such a procedure would involve more confusion and leave police witnesses under options one and two subject to a more uncertain and indefinite subpoena than they are now obligated under.
We deem that the issuance of three-week, on-call subpoenas is a reasonable solution to a problem which obstructs the efficient operation of our criminal justice system. Notwithstanding, the prosecutor does not have absolute discretion in implementing the challenged procedure. He must employ the system realistically with respect to the number of criminal cases he estimates should be subject to on-call subpoenas when measured against the number of judges, assistant prosecutors and defense attorneys available for trial during the time period comprehended by the subpoena.
Plaintiffs have also sought an order compelling the prosecutor reasonably to compensate them for the time in which they remained subject to the on-call subpoena but were not otherwise on duty. The burden of compensating policemen has been cast on the municipalities for which they work. In matters concerning the right to compensation for overtime work, it is the Legislature which decides what amount, if any, municipalities may agree to pay policemen. N.J. State Police Ass'n v. Irvington, 121 N.J. Super. 321, 325 (App.Div. 1972).
N.J.S.A. 40A:14-132 defines a police work week as 40 hours, with the maximum of eight continuous hours, except in cases of emergency. However, the statute remains inoperative until *366 adopted by ordinance of the governing body of the municipality. The record does not disclose how many municipalities have adopted an ordinance pursuant to N.J.S.A. 40A:14-132. In the event that a policeman works overtime in a case of an emergency, he is entitled to a day off, N.J.S.A. 40A:14-133, or, in the municipality's discretion, he may be compensated at a rate not in excess of 1 1/2 times his prevailing hourly pay.
Although not classified as an emergency pursuant to N.J.S.A. 40A:14-134, a municipality may by ordinance provide that the required appearance in a noncivil Superior Court proceeding by one of its officers is "a time of assignment to, and performance of duty." N.J.S.A. 40A:14-135. When such an appearance occurs outside an officer's assigned duty, he shall receive either compensatory time off from his regular duty hours or additional compensation. Ibid., Kayne v. East Paterson, 121 N.J. Super. 296 (Law Div. 1972). Prior thereto a municipality could not compensate its policemen for court appearances. The Legislature has recognized that police perform a central role in the administration of justice, and the conventional rule of no witness fee for persons subpoenaed in criminal actions on behalf of the State, R. 1:9-1, is not inconsistent therewith.
It is questionable whether N.J.S.A. 40A:14-135 is applicable to the situation within where plaintiffs are on-call but not actually appearing in court, since the statute is framed in terms of "required appearance" in a noncivil Superior Court proceeding. Furthermore, a municipality is not required to compensate its policemen who testify during their off hours. The mandatory word "shall" be compensated only comes into effect after the discretionary word "may" provide. Nonetheless, the one thing we can definitely ascertain from N.J.S.A. 40A:14-135 is the recognition of municipalities having the employer-related function of compensating its police officers for their off-duty hours spent testifying in criminal trials pursuant to a subpoena.
Affirmed.
NOTES
[1] Former 28 U.S.C.A. § 655, the predecessor of Federal Rule of Criminal Procedure 17.
[2] If any person on whom lawful process shall have been duly served to testify, depose or give evidence concerning any cause or matter pending in any court ... shall not appear according to the command of such process, having no lawful or reasonable excuse for such default, he shall: . .

(c) [b]e punishable for contempt of the court out of which the process issued. [N.J.S.A. 2A:81-15]