910 P.2d 326

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael Edward KLEMPT, Defendant.**

**In the Matter of Kyle HINKLE, Appellant.**

**No. 16149.**

Court of Appeals of New Mexico.

Dec. 6, 1995.

Tom Udall, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for Appellant.

## OPINION

HARTZ, Judge.

■ 1. Kyle Hinkle appeals an order holding him in criminal contempt of court for failing to comply with a subpoena. Hinkle contends that the evidence is insufficient to support the order. To resolve this contention we must consider an issue of first impression in New Mexico—the propriety of an on-call subpoena. We affirm.

## FACTS

2. On July 28, 1994 Hinkle, who at the time was a sergeant detective with the Lovington Police Department, was personally served with a subpoena to testify at the trial of Michael Edward Klempt on criminal charges. The subpoena commanded him to appear on September 6, 1994 at 8:30 a.m. at the Lea County Courthouse. At the bottom of the subpoena was a directive to call the district attorney's office after 5:00 p.m. on the day before the setting to confirm that the hearing was still set.

3. On August 31 assistant district attorney Nelson Spear informed Hinkle that the case was going to trial and would be first or second on the court's trailing docket. On September 7 Spear called the police department shortly after 3:00 p.m. to advise Hinkle that the trial would be starting the next day and that his attendance was required. Spear was told that Hinkle had left at approximately 3:00 p.m. to go on a vacation. Nevertheless, with the assistance of the police dispatcher, Hinkle's supervisor was able to reach him by telephone by 3:25 p.m. and request Hinkle to call Spear. Sometime before 3:45 p.m. Spear spoke to Hinkle to inform him that he was needed for trial the next day. Although he seemed upset, Hinkle agreed to be present. Within an hour, however, Hinkle had another telephone conversation with Spear in which Hinkle stated that he was going to continue on his trip and would not be attending the trial.

4. When the trial commenced on September 8, Hinkle failed to appear. The district court dismissed the charges against Klempt for reasons unrelated to Hinkle's failure to appear.

5. On sworn motion by Spear, the district court issued an order requiring Hinkle to show cause why he should not be held in contempt for his failure to appear. Following an evidentiary hearing the district court held Hinkle in contempt and fined him $350.

## DISCUSSION

■ 6. To begin with, we discuss the legal consequences of a subpoena. For the reasons that follow, we reject Hinkle's contention "that a Subpoena for attendance at 8:30 a.m. on September 6, 1994 does not support a finding that such subpoena is effective for attendance on September 8, 1994." This contention constituted essentially all of Defendant's argument at the contempt hearing.

7. Hinkle was subpoenaed to testify in a criminal trial. The New Mexico Rules of Criminal Procedure for the District Courts state that in general "[t]he Rules of Civil Procedure for the District Courts ... govern the compelling of attendance of witnesses in criminal cases." SCRA 1986, 5–613(A) (Repl. 1992). The pertinent provisions of the civil rules are as follows:

> Every subpoena shall be issued by the clerk under the seal of the court, shall state the name of the court and the title of the action, and shall command each person to whom it is directed to attend and give testimony at a time and place therein specified. The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence, signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in before service.

SCRA 1986, 1–045(A) (Repl.1992).

> Failure by any person without adequate excuse to obey a subpoena served upon

him may be deemed a contempt of the court from which the subpoena issued.

SCRA 1986, 1–045(F).

8. Rule 5–613(A) says nothing about a continuing duty to attend court or keeping witnesses "on call." Nonetheless, the rules governing subpoenas must be given a common-sense, practical construction. Many trials last several days or longer. Given the contingencies of trial practice, it is almost impossible to predict precisely when a witness will be needed to testify. Thus, when a subpoena is issued, it will ordinarily state the time at which trial is scheduled to commence rather than the time at which the witness will actually testify. Yet, no purpose would be served by requiring every witness scheduled for a trial to appear at the courthouse at the time trial is scheduled to commence and then remain at the courthouse until the witness is called to testify in the courtroom. Such a requirement would waste time and money as well as antagonize witnesses and discourage them from cooperating with litigants.

9. Consequently, it is frequent practice for a party who subpoenas a witness to advise the witness that it is not necessary to appear at the precise time stated on the subpoena, to provide the witness with an approximate time at which the witness's testimony will be needed, and to arrange a means by which the witness can be kept informed about developments. This practice is particularly useful when the trial court uses a trailing docket, which sets several cases to begin at the same time so that if the first case scheduled does not proceed to trial (because, for example, of a settlement or plea agreement), the next case is ready to go. The effect of the on-call procedure is to ensure the attendance of the witness while excusing the witness from having to stay at the courthouse from the commencement of trial until testifying. As stated by one court:

> The on-call subpoena minimizes the burden by not requiring the witness to be in court when his appearance is not needed. Instead, he is allowed to remain at home or work, subject to the requirement of keeping in touch with the [party issuing the subpoena] to determine when the case has been rescheduled and/or when his testimony is needed.

*Reiman v. Breslin,* 175 N.J.Super. 353, 418 A.2d 1293, 1299 (App.Div.1980). In short, common practice—a practice that is essential if the courts are to avoid undue burdens on witnesses and counsel—is based on the understanding that a subpoena imposes a continuing duty on the witness to attend court at the direction of the party who obtained the subpoena.

10. Not surprisingly, this understanding reflects the law. The United States Supreme Court has held that when a trial is continued from April 2 to April 9, a subpoena to attend on April 2 compels attendance on April 9. *Blackmer v. United States,* 284 U.S. 421, 443, 52 S.Ct. 252, 257, 76 L.Ed. 375 (1932). The Court wrote that "[i]t was the duty of the petitioner to respond to the subpoena and to remain in attendance until excused by the court or by the government's representatives." *Id.* Although *Blackmer* was interpreting a statute that specifically required a person served with a subpoena to attend " 'and not to depart the court without leave thereof, or of the district attorney,' " *United States v. Snyder,* 413 F.2d 288, 289 (9th Cir.), *cert. denied,* 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 (1969) (quoting former 28 U.S.C. § 655), the deletion of that statutory language has not changed federal law, which still recognizes that in a criminal trial, "a subpoena to appear on a particular date imposes on the witness a continuing duty to remain in attendance until excused by the court or by the government's attorney." 2 Charles A. Wright, *Federal Practice and Procedure, Criminal* § 273, at 148 (2d ed. 1982).

11. Our decision in *Armijo v. Armijo,* 98 N.M. 518, 650 P.2d 40 (Ct.App.1982), supports the same proposition. A hearing was interrupted after a witness had testified on direct examination but had not been cross-examined. The witness was not present when the hearing resumed several weeks later. Although the holding could be construed narrowly to apply only to a witness who is in the course of testifying when the proceeding is suspended, the opinion is properly read as stating that a subpoena imposes

a continuing duty to appear. We wrote: "Since the trial court did not excuse the witness after the first hearing, the witness should have been present at the later hearings.... The witness was still subject to the subpoena served by plaintiff." *Id.* at 520, 650 P.2d at 42.

12. This compulsion to attend continues even if the party obtaining the subpoena relieves the witness from remaining at the courthouse, thus placing the witness on call. *See Snyder; In re Ragland,* 343 A.2d 558 (D.C.1975) (construing District of Columbia Superior Court Rules of Criminal Procedure, Rule 17(g)); *see also In re Grand Jury Witness,* 835 F.2d 437 (2d Cir.1987), *cert. denied,* 485 U.S. 1039, 108 S.Ct. 1602, 99 L.Ed.2d 917 (1988). In *Snyder* the subpoena told the witness to appear on February 20. The United States Attorney agreed that the witness could remain on call. The witness received a telegram directing him to appear in court on April 9, but he failed to appear. The appeals court affirmed a ruling that the witness was guilty of contempt. *Ragland* similarly involved an on-call subpoena. Because our Rule 1–045(A) tracks the language of Federal Rule of Criminal Procedure, Rule 17(g), judicial interpretation of the federal rule has strong persuasive force.

13. The common-sense, practical concerns that support recognition of on-call subpoenas have also led state jurisdictions to adopt the same view. *See In re Tarpley,* 293 Ala. 137, 300 So.2d 409, 410–12 (Ala.1974); *In re Grand Jury Subpoenas,* 363 So.2d 651 (La. 1978); *Reiman v. Breslin; State v. Tatum,* 74 Wash.App. 81, 871 P.2d 1123, *review denied,* 125 Wash.2d 1002, 886 P.2d 1134 (1994). We note that if the arrangement for an on-call subpoena becomes unreasonable or oppressive, the witness may seek a protective order. *See Snyder,* 413 F.2d at 290; *cf.* SCRA 1–045(B) (protective order for subpoena duces tecum).

14. The only case to come to our attention that states a contrary view is *O'Brien v. Walker,* 49 Ill.App.3d 940, 7 Ill.Dec. 372, 378, 364 N.E.2d 533, 539 (1977). Without reference to any of the decisions in other jurisdictions upon which we rely, the opinion baldly asserts that a court order is necessary to compel the appearance of a subpoenaed witness if the trial date is continued. *Id.* We find *O'Brien* unpersuasive.

■ 15. The sole remaining issue is whether the evidence was sufficient for the district court to find beyond a reasonable doubt that Hinkle's failure to appear was "without adequate excuse." SCRA 1–045(F). We hold that it was. The evidence would support a determination that Hinkle received adequate notice that he should be available for trial on September 8 and that his only reason for not appearing was that he preferred to go on vacation rather than comply with his obligation under the law. Such conduct is totally unacceptable from a law enforcement officer. We affirm.

16. **IT IS SO ORDERED.**

APODACA, C.J., and ALARID, J., concur.