1998-NMCA-149

968 P.2d 784

**ATTORNEY GENERAL Tom Udall for the State of New Mexico, Plaintiff–Appellee,**

v.

**Enrique Carlos MONTOYA, Defendant–Appellant.**

**No. 18690.**

Court of Appeals of New Mexico.

July 8, 1998.

Certiorari Denied, No. 25,336, Oct. 14, 1998.

Tom Udall, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

John A. McCall, Albuquerque, for Appellant.

## OPINION

HARTZ, Chief Judge.

{1} Defendant appeals an order finding him criminally liable for contempt of court and sentencing him to serve 179 days in the Santa Fe County Jail. He contends that (1) the trial court erred in failing to provide him with counsel at the contempt hearing, (2) the trial court erred in quashing a subpoena directed to his former counsel, (3) there was insufficient evidence of guilt, and (4) the trial court applied an incorrect burden of proof in finding him in contempt. We reject his first three arguments. But because the trial court may have applied an incorrect burden of proof, we remand for further proceedings.

## BACKGROUND

{2} The Attorney General filed a complaint in September 1996 seeking to enjoin Defendant from a variety of unlawful practices in connection with his business as a mortgage loan broker. On April 23, 1997 the Attorney General and Defendant entered into a stipulated permanent injunction. It prohibited Defendant from conducting business as a mortgage loan company or a loan broker except as an employee of a registered loan broker or mortgage loan company. A transition provision permitted Defendant to finish processing loan documents that had been completed and signed before April 23, 1997, upon the condition that he provide the Attorney General with copies of all such applications by April 25.

{3} On June 13, 1997 the Attorney General filed a motion for an order to show cause why Defendant should not be held in contempt for failing to comply with the stipulated injunction by continuing to act as a loan broker and continuing to act on loan applications. A hearing on the order to show cause began on July 10, 1997. Defendant appeared without counsel. Earlier that day the trial court had allowed his counsel to withdraw. Defendant requested the trial court to recon-

sider its decision, but the request was denied. Defendant then sought a continuance so that he could obtain materials that his counsel had retained. The trial court agreed in part but suggested that the State be permitted to present the witnesses who were already there. Defendant objected that he did not know the rules of procedure and that he would be seeking counsel to assist him in the hearing. The trial court then asked Defendant if he was indigent and stated that if Defendant was, he would be provided an attorney. Defendant responded, "I would appreciate that if I can qualify." There was no further discussion of the matter. The trial court permitted the State to call one witness, because the witness had traveled a long distance for the hearing, and then continued the trial.

{4} The trial recommenced on July 22, 1997. Defendant again appeared without counsel and proceeded pro se, never suggesting in any way that he was entitled to appointed counsel. At the conclusion of the trial on July 23, the trial court found Defendant guilty of the crime of contempt.

## DISCUSSION

### 1. Right to Counsel

{5} Defendant argues that he was entitled to counsel in this criminal proceeding and that the trial court erred in failing either to appoint counsel or to obtain an effective waiver of counsel. We agree that in a criminal trial for indirect contempt (that is, contempt outside the presence of the judge) the defendant has the same procedural rights as defendants in other criminal proceedings. *See International Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *State v. Gonzales,* 1997–NMSC–050, ¶ 12, 124 N.M. 171, 947 P.2d 128 (defendant sentenced to a term of imprisonment is entitled to counsel); *cf. State v. Case,* 100 N.M. 173, 176–78, 667 P.2d 978, 981–83 (Ct.App.1983) (discussing procedures for direct contempt). When Defendant appeared without counsel, the trial court properly advised him of his right to appointed counsel if he was indigent. *Cf. Blea v. Cox,* 75 N.M. 265, 403 P.2d 701 (1965) (hearing on revocation of suspended sen-

tence), *overruled on other grounds by State v. Mendoza*, 91 N.M. 688, 689, 579 P.2d 1255, 1256 (1978); *Walker v. McLain*, 768 F.2d 1181, 1184 (10th Cir.1985) (indigent defendant threatened with incarceration for civil contempt). The trial court should also have advised him of his right to confer with a public defender. The New Mexico Public Defender Act provides in pertinent part:

A. If any person charged with any crime or a delinquent act that carries a possible sentence of imprisonment appears in any court without counsel, the judge shall inform him of his right:

(1) to confer with the district public defender; and

(2) if he is financially unable to obtain counsel, to be represented by the district public defender at all stages of the proceedings against him.

B. Following notification of any person under Subsection A of this section, the judge shall notify the district public defender and continue the proceedings until the person has applied with the district public defender.

NMSA 1978, § 31–15–12 (1993).

■ {6} Nevertheless, Defendant is not entitled to relief on appeal, because he has not established that he was harmed by any failure of proper notification of his right to appointed counsel. In particular, Defendant has not shown that he was indigent and therefore entitled to appointed counsel. *Cf. State v. Pino*, 1997–NMCA–001, ¶ 5, 122 N.M. 789, 932 P.2d 13 (decided in 1996) (considering validity of waiver of counsel by indigent defendant). On the contrary, despite Defendant's being advised of the opportunity for appointed counsel if he was indigent, nothing in the record indicates that Defendant pursued this avenue for obtaining an attorney to assist him. He appeared pro se at the continued hearing and did not request either appointment of counsel or a determination of whether he was qualified for appointed counsel. Nor did he object to proceeding without counsel. Moreover, the record suggests that Defendant was not indigent. He was represented by his own counsel in this matter until just prior to the contempt hearing; and promptly after the finding of contempt, he retained counsel to assist him on appeal. On this record we will not remand for a hearing on whether Defendant was indigent at the time of trial.

## 2. *Subpoena of Former Counsel*

■ {7} Defendant's second contention is that the trial court erred in quashing his subpoena of his former counsel, Larry Maldegen. It appears from the record that the subpoena was issued on July 21. Defendant and the trial court discussed the subpoena during trial on July 22. It is unclear whether the subpoena had been served, but Defendant acknowledged that no witness fee had been tendered. Defendant asked the trial court if Maldegen could testify the next morning. The trial court responded: "Why don't you give him a call and ask him? ... My inclination is to quash [the various subpoenas issued on behalf of Defendant] simply because they are filed one day before the hearing when you knew as early as July 10 that we had this hearing [scheduled].... But ... if Maldegen can appear tomorrow, he is welcome to come.... I'm not forcing them to come because your subpoenas were filed too darn late." At trial the next day Defendant stated, "I was not able to get Mr. Maldegen to come and I have no further evidence." He later made a tender regarding how Maldegen would testify.

■ {8} We find no error by the trial court. According to the Rules of Criminal Procedure, Rule 5–613(A) NMRA 1998, the Rules of Civil Procedure govern issuance of subpoenas for criminal trials. *See State v. Klempt*, 121 N.M. 250, 251, 910 P.2d 326, 327 (Ct.App.1995). The civil rules state that the trial court may quash a subpoena if the subpoena "fails to allow reasonable time for compliance." Rule 1–045(C)(3)(a)(i) NMRA 1998. The trial court here determined that twenty-four hours was not reasonable notice, particularly when Defendant had expressed a need for the witness at the hearing twelve days earlier. Although the trial court should not actually quash a subpoena unless the subpoenaed witness moves to quash, *see* Rule 1–045(C)(3) (court may quash subpoena "[o]n timely motion"), it is not inappropriate to warn a party that the trial court would grant

such a motion. The trial court did not abuse its discretion. *Cf. State v. Padilla*, 118 N.M. 189, 198, 879 P.2d 1208, 1217 (Ct.App.1994) (denial of motion for continuance was not an abuse of discretion "[i]n view of [d]efendant's failure to use due diligence to obtain [witness's] attendance and the minimal value of the proffered testimony").

█ {9} Insofar as Defendant contends that he was denied his right to due process by the failure to enforce the subpoena, we disagree. He was given ample opportunity to present his case. He had been given a twelve-day continuance in order to obtain documents from Maldegen and subpoena him.

### 3. Sufficiency of the Evidence

█ {10} Defendant argues that the evidence at trial was insufficient to establish guilt beyond a reasonable doubt. We disagree. The stipulated injunction prohibited Defendant from conducting any business as a loan broker after April 23, 1997, except "as an employee of a mortgage loan company or loan broker who is a registrant in good standing under the Mortgage Loan Company and Loan Broker Act." The State called two witnesses, Erwin Rivera and Steven Gaylor, to prove that Defendant violated the injunction. We summarize their testimony in the following three paragraphs.

{11} Defendant hired Rivera as an employee of Affordable Mortgages, Defendant's business, about a week before the stipulated injunction. Within a week, Defendant proposed to Rivera that he set up another company, to be called SunTrust Mortgage, by applying to the state Financial Institutions Division (FID). Defendant prepared a Certificate of Exemption form for the FID. Although Rivera signed the form, he had no knowledge of the institutional investors listed on the form. The FID approved SunTrust as an exempt broker on April 24, 1997. Rivera was designated as the sole proprietor of the business, but Defendant made it clear to Rivera that Defendant would manage and operate SunTrust and make all the decisions about how the loan applications would be handled. The business of SunTrust was run by Defendant out of Affordable Mortgages' office and using Affordable Mortgages' equipment. Two weeks after SunTrust was approved as an exempt broker, Defendant requested that Rivera go through the process necessary for SunTrust to become a registered company. But SunTrust never became a registered company.

{12} During the existence of SunTrust approximately thirty loan applications came in the door. Three or four of them came in the name of Affordable Mortgages after April 23, 1997. Defendant dealt with all the loan applications and made decisions regarding the funds received. Rivera never had any decision-making authority regarding the applications that came in under SunTrust. The work he did for SunTrust was simply clerical. His authority over the finances of SunTrust was solely as a signatory for the checking account. He signed blank checks on the SunTrust account, which he turned over to Defendant. Those checks were used to pay the creditors of Affordable Mortgages.

{13} Gaylor and his wife were loan applicants. On May 10, 1997 they met with Defendant for the purpose of assisting them in obtaining a loan to purchase a mobile home. The Gaylors gave Defendant money that day for a credit check and an appraisal. He issued them a receipt on Affordable Mortgages' letterhead. The next day they filled out an application form upon which the name "Affordable Mortgages" appeared. Three weeks later they were asked to fill out a corrected application, which also named Affordable Mortgages. They never filled out any documents identifying SunTrust as the lender. Mr. Gaylor understood Defendant to be the mortgage broker. The Gaylors paid Defendant additional money, in the form of a check made out to SunTrust, on Defendant's instructions. Their mobile home was never delivered and Defendant refused to refund them their money.

{14} From this evidence a rational fact finder could be convinced beyond a reasonable doubt that Defendant continued to engage in loan brokering on his own, and certainly not as an employee of a registered company. *See State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (standard of

278

review of sufficiency of evidence in criminal case).

### 4. Burden of Proof

{15} We now turn to Defendant's final argument. After receiving all the evidence, the trial court ruled from the bench. In so doing, it stated, "The evidence before the court establishes clearly and convincingly that Montoya acted as a loan broker by originating loans after April 23, 1997 . . . ." The trial court concluded that Defendant had "willfully and deliberately, by deception and subterfuge, violated the stipulated permanent injunction." Defendant was found to be in contempt of court and sentenced to serve 179 days in jail.

{16} Defendant contends that the trial court used an incorrect burden of proof in determining that he was in contempt. For a criminal conviction of contempt, the trier of fact must be convinced of guilt beyond a reasonable doubt. See In re Stout, 102 N.M. 159, 161, 692 P.2d 545, 547 (Ct.App.1984). But the trial court's remarks indicate that it applied a clear-and-convincing-evidence standard. Although error should ordinarily not be predicated on the oral remarks of the trial court in rendering its decision, see Balboa Constr. Co. v. Golden, 97 N.M. 299, 304, 639 P.2d 586, 591 (Ct.App. 1981), here there is nothing in the record to indicate that the trial court applied, or was advised by counsel of, the proper burden of proof. In particular, the trial court's written order of contempt does not state the burden of proof. In light of the trial court's oral statement concerning the burden of proof and the profound importance of the matter, remand is necessary. See State v. Ferguson, 111 N.M. 191, 197, 803 P.2d 676, 682 (Ct.App. 1990) (Hartz, J., dissenting) (stating that remand necessary to allow trial court to apply correct standard).

{17} The State argues that because there is sufficient evidence to establish contempt beyond a reasonable doubt, this Court should affirm the verdict. But there is a world of difference between the existence of sufficient evidence to prove a proposition and a finding of that proposition by the trier of fact. Although the evidence, if believed, could sustain a conviction, the trial court may have found the evidence insufficiently convincing to remove all reasonable doubt. The evidence did not *compel* a finding of guilt beyond a reasonable doubt. Our concern is whether the trial court was in fact convinced beyond a reasonable doubt.

{18} We thus remand for the trial court to proceed as follows: First, if the trial court originally found guilt beyond a reasonable doubt, it should make a record of that action. The conviction and sentence would then stand. Second, if the trial court did not do so in the first instance, it should now determine whether it finds Defendant guilty beyond a reasonable doubt and enter a new judgment accordingly.

### CONCLUSION

{19} We affirm the trial court's failure to appoint counsel for Defendant and its ruling with respect to Defendant's subpoena of his former counsel. With respect to the finding of contempt, we remand for further proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.