**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ENRIQUE CARLOS MONTOYA,

Petitioner-Appellant,

v.

WILFRED ROMERO, Warden,
Santa Fe County Correctional Facility;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

Respondents-Appellees.

No. 00-2292
(D.C. No. CIV-99-280-LH/WWD)
(D.N.M.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **BALDOCK** , and **LUCERO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant appellant Enrique Carlos Montoya seeks a certificate of appealability (COA) from this court allowing him to appeal the district court's denial of his habeas corpus petition brought pursuant to 28 U.S.C. § 2254. Because Mr. Montoya has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), we deny his application for a COA and dismiss this appeal.

## I.

On September 3, 1996, the State of New Mexico filed a civil lawsuit against Mr. Montoya alleging violations of the state usury and unfair practices laws in connection with Mr. Montoya's alleged fraudulent brokering of real estate loans. Subsequently, Mr. Montoya entered into a stipulated permanent injunction in which he agreed to cease engaging in trade and commerce as a real estate loan broker. When the state learned that Mr. Montoya had set up a sham corporation under which he continued to engage in loan activity, it initiated criminal contempt charges against him for willful violation of the terms of the injunction.

On July 10, 1997, the state court commenced a hearing on the contempt charges. One day prior to the hearing, July 9, 1997, counsel for Mr. Montoya moved the court to withdraw as Mr. Montoya's attorney because he was not being paid. At the hearing, the judge granted counsel's request to withdraw over Mr. Montoya's objection. Mr. Montoya then requested a continuance in order

-2-

to obtain his records and files from his former counsel. At that time he indicated to the court that he would be retaining new counsel. The court informed Mr. Montoya that he had the right to appointed counsel if he qualified financially. The court then granted the continuance, resetting the hearing for July 22 and 23, 1997. Before adjourning, however, the court granted the state's request to take and preserve the testimony of one state witness who presented a hardship request. When Mr. Montoya objected, the court commented that Mr. Montoya had been in court on numerous previous occasions and had, on at least one occasion, appeared pro se, and also informed Mr. Montoya that he had the right to subpoena this witness to return on July 22.

When the contempt hearing reconvened on July 22 and 23, the trial court announced that Mr. Montoya would be appearing pro se. When the trial court asked for entries of appearance, Mr. Montoya entered his appearance pro se without further objection or comment from either the trial court or the parties. Following a two-day hearing, Mr. Montoya was found in criminal contempt for willfully, deliberately, and intentionally violating the terms of the stipulated permanent injunction. The trial court sanctioned Mr. Montoya to 179 days in jail. The next day, July 24, 1997, Mr. Montoya's retained counsel filed a motion for his release pending appeal.

The state appellate court affirmed Mr. Montoya's sentence, concluding that he was not indigent, he did not seek the assistance of an attorney, he did not request appointment of counsel, and he did not object to proceeding pro se. *Attorney Gen. v. Montoya*, 968 P.2d 784, 787 (N.M. Ct. App. 1998). In his federal habeas petition Mr. Montoya claimed (1) a violation of his Sixth and Fourteenth Amendment rights to counsel at his contempt hearing; (2) a violation of his right to jury trial; (3) that his sentence was punitive; and (4) that he was not allowed to prepare a defense, or present evidence or witnesses on the first day of his hearing. In denying his petition, the district court dismissed the last three claims on the basis of failure to exhaust and procedural default. The court denied Mr. Montoya's right to counsel claim on the merits. On appeal to this court, Mr. Montoya challenges only the district court's dismissal of his right to counsel claim.

## II.

"The Sixth Amendment of the United States Constitution guarantees a right to counsel in criminal proceedings. At the same time, a criminal defendant has a right under the Sixth Amendment to waive this right to counsel and conduct his own defense." *United States v. Hughes*, 191 F.3d 1317, 1323 (10th Cir. 1999) (citations omitted). On appeal, Mr. Montoya alleges that the district court erred in dismissing his claim that he was denied his constitutional right to counsel

-4-

because he did not voluntarily, knowingly, and intelligently waive his right to counsel at his 1997 contempt hearing. We review de novo the determination of whether a waiver of the right to counsel was knowing and intelligent. *United States v. Taylor*, 113 F.3d 1136, 1140 (10th Cir. 1997). "[A] waiver of counsel will not be valid unless it is an intentional relinquishment or abandonment of a known right or privilege." *Id.* (quotations omitted). A determination of whether a defendant's waiver of counsel is valid involves a two-step inquiry. First, the court must determine whether the defendant's waiver was voluntary. *Id.* Second, we must ask whether the waiver was made knowingly and intelligently. *Id.*

Mr. Montoya appears to believe that the trial court's decision to allow direct testimony from one state witness before adjourning the hearing for a twelve-day continuance, "forc[ed] him against his will to conduct his own defense." Appellant's Br. at 6. We do not agree. We have reviewed the taped transcript of the hearing and ascertained that once the court allowed Mr. Montoya's counsel to withdraw, it informed Mr. Montoya of his right to appointed counsel if he was financially qualified, granted a twelve-day continuance, and denied the state's request to take testimony from any other witnesses. Moreover, the court informed Mr. Montoya that he had the right to subpoena the witness who had already testified to return when the hearing reconvened, a procedure Mr. Montoya was familiar with as he subpoenaed

other witnesses.  *See* State Ct. R. at 216-23.  When the hearing reconvened, Mr. Montoya did not object to proceeding pro se or inform the court that he had not been able to obtain counsel.  Moreover, the day after the contempt hearing concluded, he had retained counsel who moved the court for his release pending appeal.  We conclude that this conduct, taken as a whole, demonstrates that Mr. Montoya voluntarily chose to proceed with the hearing without counsel.

In determining whether Mr. Montoya's waiver of counsel was knowing and intelligent, "we look to the record and the entire circumstances of the case, including the defendant's age and education, the defendant's previous experience with criminal trials, and the defendant's background, experience, and conduct." *Taylor*, 113 F.3d at 1140 *; see also Faretta v. California*, 422 U.S. 806, 835 (1975) (holding that in order for a waiver of counsel to be valid, the trial court must ensure that the defendant's waiver of his right to counsel is done knowingly and intelligently, so that the record establishes that the defendant's "choice is made with eyes open") (quotation omitted).  We have stated that

> [i]deally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se*.

*United States v. Willie*, 941 F.2d, 1384, 1388 (10th Cir. 1991).

In denying Mr. Montoya's petition for habeas relief, the federal magistrate judge rejected Mr. Montoya's contention that his waiver of counsel at the contempt hearing was not voluntary, knowing, and intelligent. Acknowledging that the state court should have determined that Mr. Montoya's waiver was knowing, intelligent, and voluntary through a formal inquiry, *see Willie*, 941 F.2d at 1388, the magistrate judge noted that there are circumstances where a waiver may be considered valid absent a formal inquiry. In these cases "the surrounding facts and circumstances, including [the defendant's] background and conduct," indicate that he "actually understood his right to counsel and the difficulties of *pro se* representation and knowingly and intelligently waived his right to counsel." *Hughes,* 191 F.3d at 1323-24. The magistrate judge then discussed in some detail Mr. Montoya's behavior both before and after the 1997 criminal contempt proceedings, making it clear that Mr. Montoya used his right to counsel to delay and confuse numerous legal proceedings. The magistrate judge noted that a waiver of counsel can be "implied through conduct, particularly 'when that conduct consists of tactics designed to delay the proceedings.'" R. Vol. II, tab 39 at 3 (quoting *Hughes*, 191 F.3d at 1323).

As the magistrate judge found, and the record supports, five different attorneys had withdrawn from representing Mr. Montoya because of his unreasonable conduct. In March 1999, a New Mexico Public Defender Sheri A.

Raphaelson moved to withdraw as counsel for Mr. Montoya. In her motion she stated that Mr. Montoya was found not to be indigent, failed to comply with a repayment order, had refused legal advice, was not desirous of representation, and used counsel "only as a typist for his pro se work." R. tab 18, ex E at 1-2. This is consistent with the record evidence that Mr. Montoya, acting pro se, submitted numerous well-drafted letters and pleadings to the court. *See, e.g.*, State Ct. R. at 548, 551, 554, 674, 740, 748.

Moreover, Mr. Montoya appeared pro se at his merits trial. In its decision on the merits of the state's lawsuit against Mr. Montoya, the state court noted that "[i]n my view, the Defendant has had ample opportunity for preparation and presentation of defense, but he has severely burdened and abused the due process of law to which he is entitled. The legal system has bent over to accommodate the Defendant and he has taken that opportunity to kick it firmly in the behind." R. tab. 18, ex. K at 12. The federal magistrate judge noted that Mr. Montoya's "pattern of approach-and-avoidance spanned several contempt hearings . . . as well as the trial on the merits in December 1998 and January 1998, (sic) at which he again appeared pro se." *Id.*, tab. 39 at 7-8.

We are aware that Mr. Montoya is not a trained attorney. This does not, however, imply that he lacks familiarity with, or experience in, the courtroom. The state noted that not only had Mr. Montoya been the subject of a plethora of

litigation surrounding his questionable loan brokering activities, but he also had criminal experience with the courts. R. tab 18, ex. BB at 5. Most applicable to the circumstances here is our caution that

> "[t]he right to make a knowing and intelligent waiver of the right to counsel does not grant the defendant license to play a cat and mouse game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel."

*Hughes*, 191 F.3d at 1323 (quoting *United States v. Allen*, 895 F.2d 1577, 1578 (10th Cir. 1990)) (further quotation omitted).

We recognize that the trial court could have done a more thorough job of formal inquiry into Mr. Montoya's understanding of his decision to go forward pro se. We agree with the magistrate judge, however, that "[f]rom an examination of the 'entire circumstances' of this case, it is abundantly clear that this is a case where formal inquiry does not invalidate a defendant's waiver of the right to counsel." R. Tab 39 at 7 (quoting *Taylor,* 113 F.3d at 1140); *see also Hughes*, 191 F.3d at 1324 (determining waiver of counsel to be valid because of defendant's handling of the case and despite lack of formal inquiry).

After a careful review of the record and the applicable case law, we conclude that "even though the [trial] court failed to make a comprehensive and probing formal inquiry into the knowingness and intelligence of [Mr. Montoya's] waiver, looking at the circumstances as a whole, the facts on the record are

sufficient in this case to establish that [Mr. Montoya] intelligently, knowingly and voluntarily waived his right to counsel." *Willie*, 941 F.2d at 1391. Therefore, Mr. Montoya fails to make a substantial showing of the denial of a constitutional right as required under § 2253(c)(2). Specifically, Mr. Montoya fails to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims [here] debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, we DENY Mr. Montoya's application for a COA and DISMISS his appeal.

Entered for the Court

Bobby R. Baldock
Circuit Judge
