217 N.J. Super. 614 (1987)
526 A.2d 737
KENNETH T. HAYES AND MARY LOU HAYES, PLAINTIFFS-APPELLANTS,
v.
COUNTY OF MERCER, MERCER COUNTY'S PROSECUTORS, PHILIP S. CARCHMAN, WILLIAM A. ZARLING, JOSEPH C. FABRIZIO, JOHN DOE AND RICHARD ROE AND STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND MERCER COUNTY'S PROSECUTORS, PHILIP S. CARCHMAN, WILLIAM A. ZARLING AND JOSEPH C. FABRIZIO, DEFENDANTS-THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
FRANK J. CAHILL, JR., ESQUIRE, THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1987.
Decided May 21, 1987.
*617 Before Judges ANTELL, BRODY and D'ANNUNZIO.
Arthur K. Sirkis argued the cause for appellants.
Kim Otis, Assistant Mercer County Counsel, argued the cause on behalf of Philip S. Carchman, William A. Zarling and Joseph C. Fabrizio (Barry D. Szaferman, Mercer County Counsel, attorney; Kim Otis, of counsel and on the brief).
Madeleine W. Mansier, Deputy Attorney General, argued the cause on behalf of respondent State of New Jersey (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Madeleine W. Mansier on the brief).
No briefs were filed on behalf of respondents County of Mercer, Mercer County's Prosecutors and Frank J. Cahill, Jr., Esquire.
The opinion of the court was delivered by BRODY, J.A.D.
Kenneth T. Hayes (plaintiff) and his wife brought this action for false arrest and related torts against three public employees and two public entities who were responsible for instituting extradition proceedings against him. Those proceedings were terminated when the victim of the alleged crime could not identify plaintiff at a lineup. Plaintiffs assert their claims under 42 U.S.C.A. § 1983 and the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
Defendants are the Mercer County prosecutor and one of his assistant prosecutors, who initiated the proceedings, an investigator in the prosecutor's office who gathered the evidence, and the County of Mercer and the State of New Jersey who are allegedly liable under the doctrine of respondeat superior. Plaintiffs appeal a summary judgment that the trial judge entered in favor of all defendants on the ground that they are absolutely immune under federal and New Jersey law.
*618 In 1973 a Mercer County grand jury indicted a man it named Kenneth Hayes for obtaining money under false pretenses from James M. Howarth, contrary to former N.J.S.A. 2A:111-1. Howarth claimed that he had given Hayes a $1,000 down payment based on Hayes's false promise to install air-conditioning equipment in Howarth's home. As a result of the indictment, a warrant issued in 1973 for Hayes's arrest.
The warrant was still outstanding on September 26, 1982, when a Larchmont, New York, police officer stopped an automobile because he believed that its inspection sticker was invalid. When the officer routinely ordered a lookup on plaintiff, who was operating the automobile, he learned of the warrant and arrested him. Later that day plaintiff was released to his New York attorney, Frank Cahill. Two weeks later Cahill wrote a letter to the Mercer County prosecutor in which he personally vouched for plaintiff, stated that plaintiff has been a respected contractor in New York City since 1949, and insisted that plaintiff was not the man who had been indicted by the Mercer County grand jury in 1973.
The prosecutor did not accept Cahill's claim at face value because there were major similarities between facts known about plaintiff and facts known about the man who had been indicted. Their first and last names were identical. The indicted man's middle name was not known. They were both building contractors. Inconclusive evidence suggested that they were the same age: Cahill stated that plaintiff was born October 10, 1930; a 1973 police report notes that a former New Jersey employer had said that the indicted man was born September 30, 1930. Although Cahill stated in his letter that plaintiff has worked in New York since 1949, he also referred in his letter to a New Jersey customer who in 1951 made a criminal complaint against plaintiff for failing to complete promised construction work in New Jersey. According to Cahill, "The New Jersey Judge, after reviewing the facts, dismissed the matter, since he realized this was not a criminal matter, but a civil one involving a construction contract."
*619 Cahill made other representations in his letter, however, which, if believed, exculpate plaintiff.
The prosecutor wrote a letter to Cahill on November 16, 1982, in which he made the following proposal to put the matter to rest:
My suggestion at this point on how to resolve this issue with the least inconvenience to all concerned is to have Mr. Hayes proceed to the Larchmont, Westchester County, Police Headquarters, for the purposes of being photographed. Upon that photograph being transmitted to this Office, we shall complete our investigation and if no identification can be made, then we will dismiss the warrant as to your client.
While I appreciate the sincerity of the representations made in your letter, it is still imperative that the victims have an opportunity to make an identification, albeit by a photograph. If you have any problems with the above procedure, please do not hesitate to contact me.
The investigator submitted an affidavit to support defendants' motion for summary judgment in which he stated, without contradiction in Cahill's responding certification, that Cahill had refused the prosecutor's offer even after the investigator further offered to let New York police conduct the photographic identification. The prosecutor initiated the extradition proceedings as a result of this refusal.
The Governor of New York received the extradition papers in December 1982. Plaintiff appeared for a preliminary hearing in New York on February 25, 1983, and was released on his own recognizance. At an April 7, 1983 lineup, held in New York for plaintiff's convenience, Howarth was unable to identify plaintiff positively as the man who had defrauded him 10 years earlier. The prosecutor immediately had the extradition warrant dismissed.
We must consider separately the immunities available under federal law and the immunities available under state law because state law immunities do not protect public employees and their employers from § 1983 claims. Mancici v. Lester, 630 F.2d 990, 994-995 (3rd Cir.1980).
Under federal law, a state prosecutor is absolutely immune from liability for alleged § 1983 civil rights violations committed *620 in the course of "initiating a prosecution and ... presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128, 144 (1976). The Court expressly did not decide whether absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." Id. at 430-431, 96 S.Ct. at 995, 47 L.Ed.2d at 143-144.
A state prosecutor who initiates an extradition proceeding has thereby performed a judicial, not an investigative, function so that he is absolutely immune from liability under § 1983 for damages arising therefrom. Ross v. Meagan, 638 F.2d 646, 648-649 (3rd Cir.1981). The prosecutor and his assistant prosecutor are therefore entitled to absolute immunity under federal law.
Plaintiffs' main argument is that because the prosecutor and the assistant prosecutor were admittedly not certain that plaintiff was the man who had been indicted, they initiated the extradition process solely as a means of compelling plaintiff to submit to an identification by Howarth. Plaintiffs argue that in view of that motive, initiating the extradition proceedings was not a judicial act but an investigative act that does not entitle the prosecutor and the assistant prosecutor to absolute federal immunity.
Plaintiffs' argument is flawed because federal absolute immunity turns on what the prosecutor has done, not on why he did it. If his act was functionally judicial, he is entitled to absolute immunity even though his motive was investigative. The whole point of affording a prosecutor an absolute immunity for performing a judicial function is to render his motives irrelevant.
Unlike a prosecutor, an investigator cannot perform a judicial function because he does not participate in court proceedings as a judge or an attorney. Thus even when acting under the direction of a prosecutor who is absolutely immune, *621 an investigator under federal law is only "entitled to a qualified immunity for official actions taken in good faith." Ross v. Meagan, 638 F.2d at 649; Cleary v. Anderson, 423 F. Supp. 745, 749-750 (D.C.Neb. 1976).
If good faith in this context requires that a public employee who caused a claimant harm be certain that his discretionary conduct was lawful, then a § 1983 claim could rarely be dismissed on a motion for summary judgment because the employee's actual state of mind would always be in issue. Favoring the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority," the United States Supreme Court established an objective rather than subjective standard in its definition of good faith. Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 2733, 73 L.Ed.2d 396, 403-404 (1982) (quoting from Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895, 916 (1978)). Thus to obtain a summary judgment in a § 1983 action, a public employee need only show "the objective reasonableness" of his conduct. Ibid.
We are satisfied that the marked similarities between facts known about the indicted man and facts known about plaintiff coupled with plaintiff's undenied refusal to submit to even a photographic identification, established the objective reasonableness of the investigator's conduct. Even though the investigator was not certain that plaintiff was the right man and even if the investigator's conduct contributed to the decision by the prosecutor and the assistant prosecutor to institute extradition proceedings against the wrong man, the investigator was entitled to summary judgment on plaintiffs' § 1983 claim.
The prosecutor and assistant prosecutor are also entitled to an absolute immunity under the New Jersey Tort Claims Act for their conduct in this case. That specific immunity appears in N.J.S.A. 59:3-8:

*622 A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment.
We agree with the federal authorities and hold that an extradition proceeding is a judicial proceeding. The Tort Claims Act immunity, however, is not so absolute as the federal immunity because all Tort Claims Act immunities are subject to N.J.S.A. 59:3-14a:
Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
The prosecutor and the assistant prosecutor are entitled to a summary judgment because there was no evidence on the motion that their institution of extradition proceedings constituted a crime, actual fraud, actual malice or willful misconduct.
The investigator is entitled to a specific qualified immunity under the Tort Claims Act. N.J.S.A. 59:3-3 provides:
A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.
In considering the scope of a public employee's immunity in the context of an action against the employee for defamation, our Supreme Court quoted liberally from Harlow v. Fitzgerald, supra, and adopted that Court's general view that public employees should be able to "discharge their duties without excessive judicial supervision." Burke v. Deiner, 97 N.J. 465, 480 (1984). For the same reason we adopt the objective good-faith standard announced in Harlow as the standard to be applied in defining the good-faith component of qualified immunity under the Tort Claims Act. In our discussion of the federal qualified immunity, we stated why the investigator acted in good faith here.
To prevail on a motion for summary judgment, a public employee need not establish his subjective, i.e., actual, good faith if his conduct was objectively reasonable. Subjective good faith nevertheless remains available to a public employee as a second line of defense, which he may raise at trial even if he was not acting reasonably. However, N.J.S.A. 59:3-3 withholds *623 the defense of subjective good faith where the claim, as here, is for "false arrest or imprisonment." Legal justification or probable cause for detention are the defenses to an action for false arrest or imprisonment, Jorgensen v. Pennsylvania Railroad Co., 38 N.J. Super. 317, 349 (App.Div. 1955), certif. den., 20 N.J. 308 (1956), and those are the only defenses available to a public employee who otherwise would be entitled to the good-faith immunity. In applying the objective good-faith standard as the investigator's first line of defense, we have already concluded that he proceeded on reasonable or probable cause. The false arrest or imprisonment exception to the good-faith immunity defense has therefore been satisfied.
There was no evidence that the investigator's conduct constituted a crime, actual fraud, actual malice or willful misconduct that would cause the investigator to lose his qualified immunity. N.J.S.A. 59:3-14a.
Plaintiffs' remaining points are clearly without merit. R. 2:11-3(e)(1)(E).
Affirmed.