676 A.2d 1083

MARIA J. CANICO, PLAINTIFF–RESPONDENT, v. ORLANDO L. HURTADO AND CITY OF NEWARK, DEFENDANTS–APPELLANTS.

Argued January 3, 1996—Decided June 18, 1996.

*John C. Pidgeon,* argued the cause for appellants (*Michelle Hollar–Gregory,* attorney; *Kathleen C. Goger,* on the brief).

*Matthew R. Pomo, Jr.,* argued the cause for respondent (*Doyle and Brady,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether a police officer responding to the report of a crime is entitled to immunity from liability for the negligent operation of a police vehicle, if the officer acted in good faith within the meaning of the New Jersey Tort Claims Act, *N.J.S.A.* 59:3–3 ("section 3–3"). Plaintiff Maria J. Canico alleges that Newark police officer Orlando L. Hurtado negligently caused an automobile accident in which Canico sustained personal injuries and property damage. The Law Division held that Hurtado was entitled to good-faith immunity. Pursuant to *Rule* 4:40–1, it granted judgment for Hurtado and the City of Newark (jointly described as "defendants") at the close of plaintiff's case. In an unreported opinion, the Appellate Division reversed. We granted defendants' petition for certification, 142 *N.J.* 456, 663 *A.*2d 1363

(1995). We reverse the judgment of the Appellate Division and reinstate the judgment of the Law Division.

## I.

The accident occurred while Canico was driving south on Broad Street, Newark, at 6:00 p.m. on October 15, 1990. As Canico stopped her vehicle at a red light and waited to make a left turn to Lafayette Street, she heard the sound of approaching sirens. Three fire trucks travelling west on Lafayette turned south on Broad Street. The light turned green after the last truck cleared the intersection, and Canico began her left turn.

At that moment two police vehicles were proceeding south on Broad Street to the Broad National bank. A radio dispatcher had directed them to respond to an alarm at the Bank. Hurtado was driving the lead vehicle. It was proceeding at approximately 30 miles per hour, siren blaring and emergency lights flashing, in the yellow-striped lane reserved for emergency vehicles.

The emergency lane, which ends at the intersection of Broad and Lafayette Streets, becomes the left turn lane for traffic turning east onto Lafayette. As Hurtado tried to pass on the left, Canico started her left turn in front of Hurtado's police van, which struck the Canico vehicle on the left rear. Canico sustained personal injuries and property damage.

## II.

For the past three years, this Court has sought to ascertain the intent of the Legislature concerning immunity for the operation of police vehicles that cause accidents while responding to emergencies. We have construed the Tort Claims Act to hold that, absent willful misconduct, police officers and the municipality that employs them are absolutely immune under *N.J.S.A.* 59:5–2(b) ("section 2(b)") from liability caused by a police pursuit when an escaping person injures a third party. *Tice v. Cramer*, 133 *N.J.* 347, 627 *A.*2d 1090 (1993). Last year, we extended this immunity

to instances when the pursuing police vehicle, not that of the escaping person, caused the injuries to the third party. *Fielder v. Stonack,* 141 *N.J.* 101, 661 *A.*2d 231 (1995). Guiding our determination has been not only the statutory language, but also the legislative purpose to provide broad immunity to police officers acting in the scope of their duties. *Id.* at 118, 661 *A.*2d 231. As between the public policy favoring the compensation of injured parties and that favoring vigorous law enforcement, the Legislature has chosen enforcement of the law. *Id.* at 117, 661 *A.*2d 231. That choice is consistent with the underlying legislative purpose of establishing immunity as the general rule and liability as the exception. *Bombace v. City of Newark,* 125 *N.J.* 361, 372–73, 593 *A.*2d 335 (1991).

Although we did not premise the holdings in either *Tice* or *Fielder* on good-faith immunity under section 3–3, we approved the application of that section to police pursuits. *Fielder, supra,* 141 *N.J.* at 133, 661 *A.*2d 231; *Tice, supra,* 133 *N.J.* at 371, 374, 627 *A.*2d 1090. Two members of the Court explicitly endorsed reliance on the good-faith immunity of section 3–3. *Fielder, supra,* 141 *N.J.* at 137, 661 *A.*2d 231 (Stein, J., concurring); *Tice, supra,* 133 *N.J.* at 382, 627 *A.*2d 1090 (O'Hern, J., concurring). To further the legislative goal of encouraging pursuits, however, both *Tice* and *Fielder* relied on section 2(b)'s grant of absolute immunity, rather than section 3–3's qualified immunity. Thus, the immunity accorded a police officer engaged in a high-speed chase is not limited to the good-faith provision of section 3–3.

Here, however, Hurtado was not pursuing "escaping persons." Consequently, he cannot rely on the absolute immunity of section 2(b). The question is whether defendants are entitled to immunity under section 3–3. That section provides in relevant part:

A public employee is not liable if he acts in good faith in the execution or enforcement of any law.

Unlike the absolute immunity of section 2(b), section 3–3 requires that to enjoy qualified immunity public employees must act in "good faith." *Bombace, supra,* 125 *N.J.* at 366–67, 593 *A.*2d 335.

The most basic duty of a police officer is to enforce the law. *Reiman v. Breslin,* 175 *N.J.Super.* 353, 362, 418 *A.*2d 1293 (App.Div.1980). In discharging this duty, police officers may use all reasonable means to uphold the law and apprehend perpetrators. *State v. Cohen,* 32 *N.J.* 1, 9, 158 *A.*2d 497 (1960). Canico contends that, in responding to a reported bank robbery, Hurtado was not engaged in an act of law enforcement under section 3–3. We reject that contention. By responding to a radio call directing him to the scene of a potential crime, Hurtado was enforcing the law.

Although we recognize that people ordinarily do not use the term "good faith" to describe the operation of motor vehicles, we believe that the Legislature intended that the term could encompass the operation of police vehicles. A public employee, although negligent, may still act in good faith. *Marley v. Palmyra Bor.,* 193 *N.J.Super.* 271, 295, 473 *A.*2d 554 (Law Div.1983). To pierce section 3–3's qualified immunity, a plaintiff must prove more than ordinary negligence. *See id.* at 294, 473 *A.*2d 554 (stating that recklessness usually denies good faith).

In many cases, the question of "good faith" presents a question of fact to be resolved at a plenary hearing. *Fielder, supra,* 141 *N.J.* at 132, 661 *A.*2d 231. Summary judgment under section 3–3, however, is appropriate if public employees can establish that their acts were objectively reasonable or that they performed them with subjective good faith. *Hayes v. Mercer County,* 217 *N.J.Super.* 614, 622, 526 *A.*2d 737 (App.Div.), *certif. denied,* 108 *N.J.* 643, 532 *A.*2d 226 (1987); *accord Fielder, supra,* 141 *N.J.* at 132, 661 *A.*2d 231; *Tice, supra,* 133 *N.J.* at 374, 627 *A.*2d 1090. In *Lear v. Township of Piscataway,* 236 *N.J.Super.* 550, 566 *A.*2d 557 (App.Div.1989), for example, the Appellate Division affirmed a grant of summary judgment for police officers and the municipality that employed them. The court held that the conduct of defendant police officers in placing leg shackles on an arrestee who complained of a leg "problem" was objectively reasonable for purposes of both a federal civil rights statute and the

New Jersey Tort Claims Act. *See also Brayshaw v. Gelber,* 232 *N.J.Super.* 99, 556 *A.*2d 788 (App.Div.1989) (deputy attorney general acted with requisite "objective good-faith" to entitle her to section 3–3 immunity from defamation suit); *Hayes, supra,* 217 *N.J.Super.* at 622–23, 526 *A.*2d 737 (actions of investigator in prosecutor's office who contributed to arrest and prosecution of wrong individual held objectively reasonable under federal law and New Jersey Tort Claims Act and therefore entitled him to summary judgment); *Delbridge v. Schaeffer,* 238 *N.J.Super.* 323, 350, 569 *A.*2d 872 (Law Div.1989) (actions of Attorney General and DYFS workers involved in action for termination of parental rights were objectively reasonable and entitled them to summary judgment on basis of section 3–3 immunity).

### III.

We conclude that Hurtado's actions were objectively reasonable and that he and Newark are entitled to good-faith immunity under section 3–3. Hurtado was responding to a radio call directing him to the scene of a suspected bank robbery. Prompt response to emergencies, such as suspected felonies, is essential to protect public safety. The response to reports of crimes-in-progress, are fraught with danger and often require split-second judgments. Moreover, Hurtado proceeded at a reduced rate of speed and tried, by using his siren and overhead light bar, to warn other motorists. Even if Hurtado's operation of the police van might otherwise be considered negligent, under the circumstances his response to the bank alarm remained objectively reasonable.

We recognize the apparent inconsistency in simultaneously describing conduct as both negligent and objectively reasonable. Legislative intent, however, not everyday usage of terms, determines the meaning of objective reasonableness when interpreting section 3–3. As we read the statute, the Legislature has chosen to immunize law enforcement officers from liability for the negligent operation of their vehicles in response to emergencies. In this sense, "good faith" in section 3–3 and "objective reasonableness"

encompass the operation of police vehicles by police officers acting within the scope of their duties and in response to an emergency.

When entering the intersection on the way to the crime scene, Hurtado proceeded in "good faith" within the meaning of section 3–3. Because we find that Hurtado's conduct was objectively reasonable, we need not consider whether he acted with subjective good faith. Both defendants are entitled to immunity from Hurtado's negligence in operating the police van.

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.