IN THE UNITED STATES DISTRICT COURT 
 FOR THE DISTRICT OF NEW JERSEY 

LAWRENCE MILLS : CIVIL ACTION 
 : 
 v. : 
 : 
MICHAEL NELSON : NO. 20-7037 
 : 

 MEMORANDUM 

Bartle, J. August 5, 2021 

 Plaintiff Lawrence Mills brings this action against 
defendant New Jersey State Police officer Michael Nelson in his 
individual capacity for alleged violations of plaintiff’s rights 
under the United States Constitution as well as for the 
commission of various torts under New Jersey law. Plaintiff’s 
claims stem from his arrest at the Golden Nugget Casino on 
November 2, 2017.1 
 On September 21, 2020, this court dismissed ten of 
plaintiff’s claims against Nelson, leaving only Count IV for 
malicious prosecution under the New Jersey Tort Claims Act and 
Count IX for malicious prosecution in violation of plaintiff’s 
Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. 
Before the court is the motion of plaintiff for partial summary 

1. Plaintiff, along with co-plaintiff Daniel Chun, has also 
brought suit against Golden Nugget and five other New Jersey 
State Police officers in another action, Mills v. Golden Nugget 
Atlantic City, LLC, Civil Action No. 19-19610, concerning the 
events related to the same arrest on November 2, 2017. 
judgment pursuant to Rule 56 of the Federal Rules of Civil 
Procedure2 and the motion of Nelson for summary judgment. 
 I 
 Under Rule 56 of the Federal Rules of Civil Procedure, 
summary judgment is appropriate “if the movant shows that there 
is no genuine dispute as to any material fact and the movant is 

entitled to judgment as a matter of law.” Fed. R. Civ. P. 
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 
(1986). A dispute is genuine if the evidence is such that a 
reasonable factfinder could return a verdict for the nonmoving 
party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 
(1986). We view the facts and draw all inferences in favor of 
the nonmoving party. See In re Flat Glass Antitrust Litig., 
385 F.3d 350, 357 (3d Cir. 2004). 
 Summary judgment is granted when there is insufficient 
record evidence for a reasonable factfinder to find for the 
nonmovant. See Anderson, 477 U.S. at 252. “The mere existence 

of a scintilla of evidence in support of the [nonmoving party]’s 

2. Plaintiff filed this motion for summary judgment against 
Nelson in Civil Action No. 19-19610 under a case caption for 
both this matter and No. 19-19610. Plaintiff, however, did not 
separately file his motion in this matter. Because the motion 
is the same as against defendants in 19-19610 and against Nelson 
in this matter and since plaintiff correctly captioned the 
motion to include both matters, we will consider plaintiff’s 
motion for partial summary judgment in this matter as it relates 
to Nelson. 
position will be insufficient; there must be evidence on which 
the jury could reasonably find for [that party].” Id. In 
addition, Rule 56(e)(2) provides “[i]f a party fails to properly 
support an assertion of fact or fails to properly address 
another party’s assertion of fact as required by Rule 56(c), the 
court may . . . consider the fact undisputed for the purposes of 

the motion.” Fed. R. Civ. P. 56(e)(2). 
 II 
 The following facts are undisputed. In November 2017 
plaintiff and some friends traveled from Maryland to Atlantic 
City, New Jersey for vacation. They stopped at the Golden 
Nugget casino and hotel. At the time, Golden Nugget was running 
a promotion whereby it would match in bonus money the amount a 
person deposited up to $1,000. Plaintiff loaned a member of his 
group, Daniel Chun,3 $1,000 to open an internet gaming (“i- 
gaming”) account under Chun’s name. On November 2, 2017 Chun 
deposited $1,000 in cash at the Golden Nugget cage in the 

casino. Plaintiff testified at his deposition that he used 
other people’s online gaming accounts to play for them and 
guaranteed to them a certain amount of any winnings. 
 After setting up his account, Chun went to the 
casino’s Wine and Wi-Fi lounge but was unable to login to his 

3. Chun is plaintiff’s co-plaintiff in Civil Action No. 
19-19610. 
account to start playing. Plaintiff was on his computer in the 
lounge at the time. Chun called customer service and the 
casino’s technical support desk multiple times for assistance in 
logging into his account. After unsuccessfully attempting to 
login following these calls, Chun went to the cashier to request 
his money back but could not withdraw the funds because his 

account was frozen. 
 Antoinette Cafone,4 the casino’s internet gaming and 
compliance manager, testified at her deposition that a patron 
may cash out whenever he wants but he cannot cash out the 
matching bonus money. However, casino personnel can temporarily 
block the account when the casino believes that something is 
amiss or wants to investigate a matter further. On November 2, 
2017 Cafone was notified by the cage that several individuals 
from Maryland had consecutively deposited $1,000 in cash for i- 
gaming accounts. Cafone testified that she found unusual this 
situation of multiple individuals in a row coming in person to 

place the same amount for online gaming into newly created 
accounts. In her experience, most customers deposit money in 
person for playing on the casino floor and deposit money online 
for i-gaming accounts. 

4. Cafone manages the integrity of the internet gaming system 
and ensures compliance with Division of Gaming Enforcement 
regulations. 
 Jeuel Cato, the online gaming payments analyst for 
Golden Nugget Online Gaming, testified that she receives 
automatic reports when there are deposits of $1,000 or more so 
that the casino can monitor the activity if needed. When she 
spoke to Chun over the phone about his account being down, his 
behavior was not typical of a legitimate player and it was 

suspicious that there was “similar activity between different 
types of people at relatively the same time or within a close 
time frame of one another.” 
 On the morning of November 2, Virginia Carr, the 
surveillance manager for Golden Nugget, filled out a so-called 
DICE report for “suspicious activity.” The report states that 
“Monitor Room advised in past hour or so 6 deposits of $1,000 
each made on i-Gaming accounts. Mostly from Maryland.” She 
testified that it was her call as to what to put in the report 
and whether to file it at all. After a DICE report is created, 
it is sent to the Division of Gaming Enforcement of the New 

Jersey State Police (“Division”). Carr did not speak to any 
members of law enforcement after filing the report and had 
nothing to do with the report after she filed it. 
 The Division receives many DICE reports, and it is up 
to the State Police whether to follow up on a report with a 
phone call or a visit to the casino to investigate it further. 
In this instance, Detective Sergeant Richard Wheeler went to the 
casino to follow up on this DICE report. Wheeler works for the 
New Jersey State Police in the Casino Gaming Bureau and was in 
the Financial Crimes Unit at the time. Wheeler sees a lot of 
DICE reports and does not follow up on every report, but he 
decided to do so in this case. He informed his supervisor, 
Detective Sergeant Carl Smallwood, that he wanted to investigate 

this matter further because of potentially fraudulent activity. 
 Wheeler and Smallwood responded to the DICE report on 
the afternoon of November 2 with Wheeler leading the 
investigation. At some point, Wheeler spoke by phone with 
Cafone about the situation. Cafone testified that it was up to 
the police whether to come to the casino to investigate the 
matter. She told Wheeler that it was suspicious that a group of 
individuals from Maryland had all opened new accounts and 
deposited the same amount in cash at the same time. She did not 
mention anything about a fraud or scheme. 
 When they arrived at the casino, Wheeler and Smallwood 

proceeded to the Wi-Fi lounge where they saw an individual who 
was later identified as Mills sitting on the couch with a 
computer and communicating to two other people nearby. When 
asked at his deposition if he observed anyone doing anything 
overtly illegal during this surveillance, Wheeler responded 
“[t]hey were on the phone. The person who was eventually 
identified as Mr. Mills was directing activities to the other 
two.” 
 Wheeler and Smallwood surveilled plaintiff and the 
others before Wheeler called Lieutenant Michael Flory, head of 
the Intelligence Management Unit, for backup in conducting 
surveillance. Flory and Officer Lance Moorhouse responded as 

backup as did defendant Officer Nelson5 and Officer Mark Devine.6 
Nelson and Devine spoke to Moorhouse and Smallwood when they 
arrived at the casino and were told to surveil the suspect in 
the lounge. 
 Nelson was not informed of any criminal activity 
occurring at the time but was instructed to conduct physical 
surveillance on the person of interest in the lounge, that is 
the plaintiff, and follow him if he moved. Nelson and Devine 
did so for about fifteen to twenty minutes during which they 
observed plaintiff use his phone but could not hear what he was 
saying. 

 Eventually Moorhouse and Smallwood followed to the 
parking garage the others who had been talking to plaintiff. 
Wheeler and Flory subsequently joined them. Smallwood and 

5. Nelson has worked in the Casino Gaming Bureau since 2014 
and was working for the Special Investigations Unit on November 
2, 2017. 

6. Devine worked in the Strategic Investigations Unit on 
November 2, 2017. 
Moorhouse stopped a person who was later identified as Chun 
along with his friends in the garage. Wheeler then arrived and 
arrested Chun and the others. 
 When Wheeler was arresting Chun, Chun told him he was 
there to make money from the casino. At this point, Wheeler 
called Devine and directed that he and Nelson were to arrest 

plaintiff. According to Devine, Wheeler had told him on the 
phone that Wheeler had probable cause based on the totality of 
the circumstances that plaintiff was “involved in some kind of a 
scam, some kind of comp [computer] scam or something of that 
nature.” Devine then told Nelson that they were to arrest 
plaintiff and escort him out of the lounge and back to the 
police station. 
 Based on Wheeler’s orders, Nelson and Devine 
approached plaintiff in the casino lounge, identified themselves 
as police officers, and informed him he was under arrest. They 
took him outside the lounge, handcuffed him, searched him, and 

transported him to the police station where he was placed in the 
holding cell area, fingerprinted, and interviewed. They were 
there for approximately two to three hours. Plaintiff was 
subsequently charged with theft by deception and released. His 
wallet and briefcase were given back to him but not his laptop 
and cell phone. Wheeler prepared the investigation report and 
typed up the summons and criminal complaint against plaintiff. 
 On November 10, 2017, some eight days after the arrest 
of plaintiff and Chun, Golden Nugget concluded its investigation 
into Chun’s account. Cato advised Chun that day by email that 
his account was open and available for playing or cash-out. On 
June 1, 2018, the New Jersey Attorney General’s office dismissed 
the charge against plaintiff “in the interests of justice.” 

Thereafter plaintiff’s phone and laptop were returned. 
 III 
 Plaintiff brings a claim under 42 U.S.C. § 1983 for 
malicious prosecution in violation of his Fourth and Fourteenth 
Amendment rights under the United States Constitution. Section 
1983 states: 
 Every person who, under color of any 
 statute, ordinance, regulation, custom, or 
 usage, of any State . . . subjects, or 
 causes to be subjected, any citizen of the 
 United States or other person within the 
 jurisdiction thereof to the deprivation of 
 any rights, privileges, or immunities 
 secured by the Constitution and laws, shall 
 be liable to the party injured in an action 
 at law, suit in equity, or other proper 
 proceeding for redress. 

42 U.S.C. § 1983. To succeed on a claim under § 1983 a 
plaintiff must prove: (1) the violation of a right secured by 
the Constitution or laws of the United States; and (2) that the 
alleged deprivation was committed or caused by a person 
amendable to suit under § 1983 and acting under color of state 
law. West v. Atkins, 487 U.S. 42, 48 (1988). 
 Analysis of a § 1983 claim begins with identifying 
“the exact contours of the underlying right said to have been 
violated” and then determining “whether the plaintiff has 
alleged a deprivation of a constitutional right at all.” Nicini 
v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). In a malicious 
prosecution claim under § 1983, a plaintiff must prove: (1) “the 

defendants initiated a criminal proceeding”; (2) “the criminal 
proceeding ended in the plaintiff’s favor”; (3) “the proceeding 
was initiated without probable cause”; (4) “the defendants acted 
maliciously or for a purpose other than bringing the plaintiff 
to justice”; and (5) “the plaintiff suffered a deprivation of 
liberty consistent with the concept of seizure as a consequence 
of a legal proceeding.” DiBella v. Borough of Beachwood, 407 
F.3d 599, 601 (3d Cir. 2005). 
 However, the doctrine of qualified immunity shields 
government officials from monetary damages in a § 1983 action 
unless a plaintiff establishes: (1) “that the official violated 

a statutory or constitutional right;” and (2) “that the right 
was ‘clearly established’ at the time of the challenged 
conduct.” Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)(citing 
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). 
 “The protection of qualified immunity applies 
regardless of whether the government official’s error is a 
‘mistake of law, a mistake of fact, or a mistake based on mixed 
questions of law and fact.’” Pearson v. Callahan, 555 U.S. 223, 
231 (2009)(quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)). 
“[Q]ualified immunity is an objective question to be decided by 
the court as a matter of law.” Curley v. Klem, 499 F.3d 199, 
210 (3d Cir. 2007). Courts are to provide “ample room for 
mistaken judgments” pursuant to the doctrine of qualified 

immunity before imposing civil liability upon law enforcement 
officers. Malley v. Briggs, 475 U.S. 335, 343 (1985). 
 As our Court of Appeals has previously stated, “there 
is no question that the right at issue, namely, the right to be 
free from arrest except on probable cause, was clearly 
established at the time of [plaintiffs’] arrest.” Orsatti v. 
New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995). This 
finding, however, “does not end the court’s inquiry” since “the 
Supreme Court has recognized that it is inevitable that law 
enforcement officers will in some cases reasonably but 
mistakenly conclude that probable cause to make an arrest is 

present.” Id. In those instances officers who acted reasonably 
will not be held personally liable. Id. Immunity therefore 
depends on whether the officer’s actions were objectively 
reasonable. Id. 
 In Rogers v. Powell, a § 1983 action, our Court of 
Appeals explained that statements of fellow officers conveying 
that there is probable cause to arrest only establish probable 
cause if these statements “are supported by actual facts that 
satisfy the probable cause standard.” 120 F.3d 446, 453 (3d 
Cir. 1997). Thus whether plaintiff’s arrest was lawful depends 
on whether Wheeler, the investigating officer who instructed 
Devine to arrest plaintiff, had probable cause to support the 
arrest. 

 In Rogers, a police officer received “vague and 
inconclusive statements” regarding the existence of an arrest 
warrant that did not in fact exist and relied on that supposed 
arrest warrant in making an arrest. Id. at 449. Another 
officer assisted in the arrest based on the first officer’s 
representations to him of a valid arrest warrant. The Court of 
Appeals found that the arrest itself was unlawful because the 
first officer “had no knowledge of any facts or circumstances to 
support his own independent determination that probable cause to 
arrest [plaintiff] existed.” Id. at 453. 
 However, even if an arrest is unlawful, the doctrine 

of qualified immunity may still shield an officer from liability 
if he reasonably relies on “what proves to be the flawed 
conclusions of a fellow police officer.” Id. at 454-55. 
“[W]here a police officer makes an arrest on the basis of oral 
statements by fellow officers, an officer will be entitled to 
qualified immunity . . . provided it was objectively reasonable 
for him to believe, on the basis of the statements, that 
probable cause for the arrest existed.” Id. at 455. 
 The Court of Appeals concluded in Rogers that it was 
not reasonable for the first officer to believe that probable 
cause existed because he never received “any statement 
confirming the existence of probable cause or a warrant itself.” 

Id. at 456. Nonetheless, it was objectively reasonable for the 
second officer to believe there was probable cause for the 
arrest since the first officer, contrary to what he had been 
told, “unambiguously related [to the second officer] the 
existence of an arrest warrant.” Id. That second officer had 
qualified immunity. 
 In this matter it was objectively reasonable for 
Nelson to believe probable cause existed for plaintiff’s arrest 
based on Devine’s directive that they were to arrest plaintiff. 
This directive was based on Devine’s conversation with Wheeler, 
an experienced investigating officer, who explained that there 

was probable cause based on the totality of the circumstances 
that plaintiff was involved in a kind of computer scam. Devine 
reasonably relied on what Wheeler told him. Nelson in turn 
reasonably relied on Devine’s good faith directive to aid him in 
arresting plaintiff since Devine’s directive was based on what 
Wheeler had just told Devine about the existence of probable 
cause. See id. at 455; see also Whiteley v. Warden, 401 U.S. 
560, 568 (1971). 
 Nelson is shielded from liability for plaintiff’s 
arrest by qualified immunity. Accordingly, this court will 
grant Nelson’s motion for summary judgment and deny plaintiff’s 
motion for summary judgment as to Count IX. 

 IV 
 Plaintiff has a remaining claim for malicious 
prosecution under the New Jersey Tort Claims Act (“NJTCA”). 
Malicious prosecution is part of “a group of closely related 
torts that although ancient in origins, are treated with great 
caution because of their capacity to chill resort to our courts 
by persons who believe that they have a criminal complaint or 
civil claim against another.” LoBiondo v. Schwartz, 970 A.2d 
1007, 1022 (N.J. 2009). 
 The tort of malicious prosecution is meant to remedy 
harm from “the institution or continuation of a criminal action 

that is baseless.” Id. It requires plaintiff to prove: (1) “a 
criminal action was instituted by this defendant against this 
plaintiff”; (2) “the action was motivated by malice”; (3) “there 
was an absence of probable cause to prosecute”; and (4) “the 
action was terminated favorably to the plaintiff.” Id. 
 However, the NJTCA provides a public employee immunity 
from liability for a tort when “he acts in good faith in the 
execution or enforcement of any law. Nothing in this section 
exonerates a public employee from liability for false arrest or 
false imprisonment.” N.J. Stat. Ann. § 59:3-3. The New Jersey 
Supreme Court has held that a public employee “must ‘establish 
that his or her acts were objectively reasonable or that he or 
she performed them with subjective good faith.’ Therefore, an 

employee may be immune from liability under either an objective 
or subjective analysis.” Leang v. Jersey City Bd. of Ed., 969 
A.2d 1097, 1112 (N.J. 2009)(quoting Canico v Hurtado, 676 A.2d 
1083, 1085 (N.J. 1996)). 
 “A public employee need prove only one component.” 
Alston v. City of Camden, 773 A.2d 693, 703 (N.J. 2001). “The 
same standard of objective reasonableness that applies in 
Section 1983 actions also governs questions of good faith under 
the [NJTCA].” Wildoner v. Borough of Ramsey, 744 A.2d 1146, 
1153 (N.J. 2000). “The subjective component refers to 
‘permissible intentions.’” Alston, 773 A.2d at 703. Under the 

NJTCA, immunity is the “general rule, with liability the 
exception.” Rosario v. City of Union City Police Dep’t, 131 F. 
App’x 785, 789 (3d Cir. 2005). 
 As with qualified immunity for plaintiff’s § 1983 
claim for malicious prosecution, Nelson is also shielded from 
liability for plaintiff’s claim for malicious prosecution under 
state law based on good faith immunity. Again, it was 
objectively reasonable for Nelson to believe probable cause 
existed for plaintiff’s arrest based on Devine’s good faith 
directive to do so. Devine acted in good faith because Wheeler, 
an experienced officer, told him there was probable cause to 
arrest plaintiff for a computer scam. Accordingly, summary 
judgment in favor of Nelson will be granted as to Count IV. 

Plaintiff’s motion for partial summary judgment will 
consequently be denied as to Count IV.