**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0363-23

FRANK LOVATO and CHRISTI
DELORENZO, as Co-Administrators
ad Prosequendum of the Estate of
FRANK A. LOVATO, deceased,
ESTATE OF FRANK A. LOVATO
by Co-Administrators FRANK
LOVATO and CHRISTI DELORENZO,
FRANK LOCATO, individually, and
CHRISTI DELORENZO, individually,

     Plaintiffs-Appellants,

v.

CLIFTON POLICE DEPARTMENT
and CITY OF CLIFTON,

     Defendants,

and

CLIFTON POLICE OFFICER JOHN
FERRARO, CLIFTON POLICE OFFICER
THOMAS SUCAMELI, CLIFTON POLICE
SERGEANT ROBERT DOMSKI, and
CLIFTON POLICE SERGEANT
GENE HAYES,

     Defendants-Respondents.

_____

Submitted February 13, 2025 – Decided February 19, 2025

Before Judges Mawla and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3006-20.

William J. Rush, attorney for appellants.

Weiner Law Group, LLP, attorneys for respondent Sergeant Robert Domski (Jay V. Surgent, of counsel; Sandro Polledri and Jacqueline A. DeGregorio, of counsel and on the brief).

Patrick J. Caserta, Esq. LLC, attorney for respondent Clifton Police Officer John Ferraro (Patrick J. Caserta, on the brief).

Dwyer Connell and Lisbona, attorneys for respondent Clifton Police Sergeant Gene Hayes (Donald S. Dedio, on the brief).

Afflitto Law Offices, attorneys for respondent Clifton Police Officer Thomas Sucameli (Joseph T. Afflitto, Jr., on the brief).

PER CURIAM

Plaintiffs Frank Lovato and Christi DeLorenzo individually and as co-administrators of the Estate of Frank A. Lovato, appeal from: two orders dated June 21, 2023, granting defendants Clifton Police Sergeants Gene Hayes and Robert Domski summary judgment and dismissal of plaintiffs' complaint; and two orders dated August 31, 2023, denying reconsideration of the June orders

and granting defendants Clifton Police Officers John Ferraro and Thomas Sucameli the same relief as Sergeants Hayes and Domski. We affirm.

On June 17, 2019, at approximately 1:50 am, decedent Frank A. Lovato and a friend were riding their motorcycles in Clifton. Lovato's motorcycle had a temporary New York license plate because he had purchased the motorcycle approximately one month prior. Officer Ferraro was on patrol in a marked police vehicle and observed the motorcycles pass him near an intersection. Both motorcycles were traveling at the speed limit.

As the motorcycles passed, Officer Ferraro looked for their registrations but was unable to immediately locate one on Lovato's motorcycle. He began following the motorcycles to visually locate the registration. Officer Ferraro attempted to "close the distance" between himself and the motorcycles, and radioed dispatch he intended to conduct a traffic stop. The motorcycles traveled through several controlled intersections and repeatedly ran red lights. Officer Ferraro followed them and "proceed[ed] through the intersection[s once he] . . . deemed it was clear" by activating his vehicle's intermittent siren and never lost sight of the motorcycles.

After approximately five minutes, Officer Ferraro informed dispatch the motorcycles continued to refuse to stop and he was traveling at speeds more than

3

100 miles per hour to keep pace. The pursuit continued at this pace through several more controlled intersections and into Paterson, before Officer Ferraro was instructed by the watch commander, Clifton Police Lieutenant Christopher Kelly, to activate his emergency siren four minutes into the chase.

Officer Sucameli joined the pursuit behind Officer Ferraro, and they cornered the motorcycles at a dead end. When the officers exited their vehicles to apprehend the motorcyclists, the motorcyclists turned and fled. The officers established a roadblock with their vehicles, but the motorcycles went onto the sidewalk and passed their vehicles.

As the pursuit continued, Lovato lost control of his motorcycle and fell into the roadway. Both officers stopped behind Lovato and exited their vehicles to apprehend him, but before they could do so, Lovato got back onto his motorcycle and fled. When the pursuit resumed, Officer Sucameli was in the lead until his vehicle became disabled and then Officer Ferraro resumed the lead.

As the pursuit returned to Clifton, Officer Ferraro saw Lovato approach an intersection traveling at approximately seventy miles per hour. The light at the intersection was a "solid red," but Lovato disregarded the signal and proceeded through the intersection, striking a "black four door sedan" that had

A-0363-23

the right of way and was traveling on the intersecting street. Lovato was thrown from his motorcycle.

Officer Ferraro notified dispatch of the crash and began to provide aid to Lovato. A Clifton Fire Department and Paramedic Units arrived on scene and administered CPR, but Lovato was pronounced dead at the scene at 2:15 a.m. Lovato's friend was subsequently located by police but was not charged with any crimes.

Officer Ferraro's post-incident report stated the reason for the pursuit was that "at least one of the motorcycles may have been stolen." He testified at deposition that "he had no specific knowledge or . . . actual evidence to support his belief that one of the [motorcycles] may have been stolen other than his own personal suspicions."

Lieutenant Kelly and Sergeants Domski and Hayes monitored the pursuit via police radio. Lieutenant Kelly was at police headquarters along with Sergeant Hayes, who was the police department supervisor. Sergeant Domski was the road supervisor and monitored the pursuit from his vehicle.

Plaintiffs filed a twelve-count complaint against the city, the police department, and the officers involved in the incident. They alleged the officers "intentionally, negligently, carelessly and/or recklessly" caused Lovato's death

A-0363-23

because they did not respond in an appropriate manner and violated the New Jersey Attorney General Vehicular Pursuit Guidelines (AG Guidelines) and Clifton Police Department Guidelines (Clifton Guidelines).

The AG Guidelines state:

> 1.  A police officer may only pursue
>
> > a.  When the officer reasonably believes that the violator has committed an offense of the first or second degree, . . . or
> >
> > b.  When a police officer reasonably believes that the violator poses an immediate threat to the safety of the public or other police officers.
>
> [Off. of the Att'y Gen., New Jersey Police Vehicular Pursuit Policy § I(A), at 5 (rev. 2009).]

Officers must terminate the pursuit

> a.  [i]f instructed to do so by a supervisor, or
>
> b.  [i]f the officer believes that the danger to the pursuing officers or the public outweighs the necessity for immediate apprehension of the violator, or
>
> . . . .
>
> f.  [i]f there is a clear and unreasonable danger to the police officer or the public. A clear and unreasonable danger exists when the pursuit requires that the vehicle be driven at excessive speeds . . . .
>
> [Id. § I(C), at 6.]

The AG Guidelines require supervising officers to determine if a pursuit should continue. Id. § V. Should they conclude at any time "that the danger to the pursuing officers or the public outweighs the necessity for immediate apprehension," they are to terminate the pursuit. Id. § V(B).

The Clifton Guidelines state:

> B. [A] pursuit should not be automatically undertaken. Officers . . . must still consider the following factors:
>
> 1. Likelihood of successful apprehension.
> 2. Whether the identity of the violator is known where later apprehension is possible.
> 3. Degree of risk created by the pursuit in relation to:
>    a. Volume, type, speed[,] and direction of vehicular traffic; or
>    b. Nature of the area . . . ; or
>    . . . .
>    d. Environmental factors such as weather and darkness; or
>    e. Road conditions . . . .
>
> [Clifton Police Dep't., Pursuit and Forcible Stopping Guidelines (March 25, 2015).]

Plaintiffs alleged the department was liable because it failed to adequately train the officers. Defendants were liable because they "allowed a dangerous custom and practice to form among . . . officers," including "allowing . . . officers to pursue and use excessive speed in response to suspected motor vehicle violations . . . without due regard to the public safety and other vehicles."

7

Defendants' actions were willful and outrageous. They were also liable for civil rights violations, and the city was liable as respondeat superior.

Following discovery, all defendants moved for summary judgment. The motion judge granted summary judgment to the city, the police department, and Sergeants Domski and Hayes, and made oral findings on June 21, 2023.

The judge found there was no evidence to establish the officers had inadequate training because the Clifton Guidelines for pursuit and forceable stopping were consistent with the AG Guidelines. All the officers had graduated from the Passaic County Police Academy, where the AG Guidelines was a part of the curriculum. "Additionally, all Clifton Police Department officers were trained on the Clifton . . . [G]uidelines semi-annually." There was no evidence of improper supervision or a violation of Lovato's civil rights on account of the department following a dangerous police pursuit policy because the only policy the department had was consistent with the AG Guidelines.

The motion judge rejected plaintiffs' argument that any deviation from the AG Guidelines was grounds for liability. He noted both the AG and Clifton Guidelines grant officers discretion to engage in a pursuit if they reasonably believe the suspect committed automobile theft or posed an immediate threat to public safety. Both guidelines require officers to notify communications and a

superior officer of "as much . . . information as is known, including the reason for the pursuit, direction of travel, designation and location of a roadway, identification of the violator's vehicle, number of occupants, the speed of the pursuit vehicle, and other information helpful in terminating the pursuit or resolving the incident."  And both guidelines require the supervising officer to ensure this procedure was followed.

The judge concluded the evidence showed the officers had complied with both guidelines in all respects.  None of the officers ignored the guidelines, policy, or a command.

Indeed, Sergeant Hayes remained in police headquarters monitoring the pursuit and "took a secondary role . . . with response to the pursuit, gave no instruction or guidance to the pursuing officers[,] and deferred to . . . Sergeant Domski with respect to the pursuit in question."  The judge found Sergeant Hayes was not liable because Lieutenant Kelly was also at headquarters, monitoring the pursuit and possessed "superior authority to terminate the pursuit if he thought it was warranted to do so."  As a result, Sergeant Hayes was "entitled to absolute immunity under [N.J.S.A.] 59:5-2(b) since plaintiff[s] provided no evidence to establish [he] engaged in willful misconduct."

The judge found there was no pursuit when Officer Ferraro first began to follow the men to see if Lovato's motorcycle was registered. There was still no active pursuit when he observed them roll "through intersections controlled by stoplights without coming to a complete stop and running a red light." But "[a]ny suspicion that the officer had that one [or] both of the motorcycles were stolen had to have been heightened so as to become objectively reasonable." When the pair saw "Officer Ferraro getting closer, they looked back at him, then each other, then immediately proceeded through [a] red light . . . [and] they began to cut around other vehicles on the roadway." Although "they had not reached the excessive speeds that ultimately occurred, there was clearly enough for the pursuing officer to have . . . reasonable suspicion that one or both [motor]cycles were stolen and certainly to have a legitimate concern for the safety of other motorists and pedestrians."

The judge concluded the pursuit was lawful because there was "absolutely no question . . . these [motor]cyclists were intentionally eluding a police officer . . . when one considers the details of the ensuing pursuit, especially once lights and siren[s] were activated." Lovato's "conduct and bizarre behavior . . . unquestionably constitute[d] a second-degree crime, a fact totally ignored by . . . plaintiffs. See N.J.S.A. 2C:29-2(b)."

Once the pursuit commenced, Sergeant Domski "took into account that Officer Ferraro radioed the traffic, weather, road conditions, his speeds and locations, which provided Sergeant Domski with enough information for the pursuit to continue." Sergeant Domski properly exercised his judgment considering "[t]he pursuit was not excessive and a danger to the surrounding civilian community, both vehicular and pedestrian traffic being light . . . , the straight roads he was traveling on at high speeds, and Officer Ferraro's ability to be able to view everything ahead of him."

The judge noted "Lieutenant Kelly also monitored the pursuit and was constantly evaluating the" condition of the motorcyclists, third-parties, and the officers.

> It was the totality of the circumstances and the fact that there was a suspected stolen motorcycle that led to Lieutenant Kelly's decision to let the pursuit continue. It was a judgment call. He determined that there was nothing to countermand his sergeant's judgment to allow the pursuit to continue.

The motion judge concluded "[n]o rational fact-finder can conclude that there was an intentional disregard or violation of the AG [G]uidelines. At most, and even this would be a stretch, the judgment of the officers was negligent[]." There was no willful misconduct, and the officers did not engage in forbidden conduct. "[A]ll officers, including supervisors, were keenly aware of the AG

11

and Clifton [G]uidelines and made a good-faith effort to comply with them." They were thus entitled to immunity.

Plaintiffs moved for reconsideration. Officers Ferraro and Sucameli also filed motions for summary judgment. The motion judge heard and adjudicated the motions together.

Plaintiffs did not dispute any of the actions taken by police during the incident but argued those actions violated the Clifton Guidelines and the AG Guidelines were non-discretionary. They also did not dispute the motorcyclists "bizarre behavior and conduct." Plaintiffs conceded there was probable cause to stop motorcycles for the registration issue. Rather, they disputed the reasons for the pursuit, namely, whether it was due to the registration or that the motorcycles could be stolen. They argued this was a question of credibility, which could not be decided on summary judgment. Plaintiffs claimed there should not have been a pursuit in the first place because once the "motorcycles started pulling away from the officer and weren't stopping when he initially wanted to stop them and he was only pursuing them for . . . an unknown registration, that he shouldn't have pursued them at all."

The motion judge pointed out the reason for police to follow the men to check their registration was different from the ensuing chase because "once the

motorcyclists . . . began to evade the police and began to essentially travel at a high rate of speed, that takes it into a different level and . . . their conduct at that point . . . was creating a hazard and a danger to other individuals." In other words, the officers had a lawful right to stop the motorcyclists for the registration infraction, and separately had a lawful right to pursue them when they attempted to evade police. These facts and circumstances had nothing to do with credibility. The officers' actions fell within their discretion, and they did not violate the non-discretionary provisions of the AG Guidelines.

The motion judge denied reconsideration and granted summary judgment in favor of Officers Ferraro and Sucameli. He noted that his June 2023 findings recounted that all the officers had acted in accordance with both sets of guidelines. This included Officers Ferraro and Sucameli, but for the fact they had not formally filed separate motions for summary judgment.

I.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). We consider whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder

to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995)).

On appeal, plaintiffs argue the judge misinterpreted the AG and Clifton Guidelines. They claim defendants violated the guidelines when they pursued Lovato because pursuit is only permissible where an officer reasonably believes the motorist committed a first- or second-degree offense or is an immediate threat to public safety. The facts showed Officer Ferraro initiated the pursuit because of a registration violation, which was a minor motor vehicle infraction.

Plaintiffs argue the judge ignored their expert who opined the pursuit was not reasonable pursuant to the guidelines. Officer Ferraro violated the guidelines because the evidence showed he pursued the motorcycles at high speeds for over three minutes before activating his siren. Sergeant Domski was also liable because he was listening to the pursuit in real time and failed to intervene to correct Officer Ferraro's violation of the guidelines.

Plaintiffs allege the judge found defendants were entitled to immunity without analyzing "whether the [o]fficers chose to undertake [an] analysis [of the guideline factors] at all." They argue the officers were not entitled to immunity because although the initial traffic stop was made in good faith, it was

negated once the officers engaged in reckless behavior during the ensuing high-speed chase. Plaintiffs claim the motorcyclists only began to evade once police gave chase. This was evidenced by Officer Ferraro testifying they were traveling "a little above the speed limit" for the first "five to six minutes" of the pursuit.

Plaintiffs assert the motion judge misapplied the summary judgment standard and failed to accord them every legitimate inference under the facts and instead construed the disputed facts in defendants' favor. For example, the judge credited defendants' assertion the officers believed Lovato's motorcycle was stolen, despite the fact Officer Ferraro never said so until after the incident. The judge also found the motorcycles were eluding police, even though defendants did not allege so and Lovato's friend was not arrested or charged with a crime. Plaintiffs claim the trial judge assessed credibility and the reasonableness of the parties' actions, which usurped the role of the jury.

## II.

"The most basic duty of a police officer is to enforce the law. In discharging this duty, police officers may use all reasonable means to uphold the law and apprehend perpetrators." Canico v. Hurtado, 144 N.J. 361, 365 (1996) (internal citation omitted). Under the Tort Claims Act, "[n]either a public

15

entity nor a public employee is liable for: . . . (c) any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2(c). Further, "[a] public employee is not liable if [the employee] acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3.

This immunity applies to a police officer's operation of a motor vehicle "within the scope of [the officer's] duties and in response to" emergent circumstances, such as a crime in progress, where the officer acted with "objective reasonableness" or with subjective "good faith." Canico, 144 N.J. at 365-67. The Court in Canico explained:

> Although we recognize that people ordinarily do not use the term "good faith" to describe the operation of motor vehicles, we believe that the Legislature intended that the term could encompass the operation of police vehicles. A public employee, although negligent, may still act in good faith. Marley v. Palmyra Bor., 193 N.J. Super. 271, 295 (Law Div. 1983). To pierce [N.J.S.A. 59:]3-3's qualified immunity, a plaintiff must prove more than ordinary negligence. See id. at 294 (stating that recklessness usually denies good faith).
>
> [Id. at 365.]

The Court also held, "[i]n many cases, the question of 'good faith' presents a question of fact to be resolved at a plenary hearing." Ibid. (citing Fielder v. Stonack, 141 N.J. 101, 132 (1995)). "Summary judgment under [N.J.S.A. 59:3-3], however, is appropriate if public employees can establish that their acts were

16

A-0363-23

objectively reasonable or that they performed them with subjective good faith." Ibid. (citing Hayes v. Mercer Cnty., 217 N.J. Super. 614, 622 (App. Div. 1987)).

In the context of a police vehicular pursuit, willful misconduct requires an officer "(1) disobey[] either a specific lawful command of a superior or a specific lawful standing order and (2) know[] of the command or standing order, knowing that it is being violated and, intend[] to violate it." Fielder, 141 N.J. at 126. "[W]here officers are allowed decision-making discretion, the law will grant them substantial leeway and immunity." Id. at 125 n.5.

Pursuant to these principles, we are satisfied the motion judge correctly determined defendants were entitled to immunity and summary judgment in their favor. We affirm substantially for the reasons set forth in the judge's oral opinion and add the following comments.

The undisputed facts show Officer Ferraro had a basis to investigate whether Lovato's motorcycle registration was valid. By necessity, this required him to follow the motorcyclists to see if he could observe the registration, and if needed, to stop them.

Neither plaintiffs' expert opinion, the fact that three minutes elapsed before Officer Ferraro activated his lights and sirens, nor that Sergeant Domski did not order Officer Ferraro to activate his lights and sirens sooner, were

dispositive of whether the guidelines were violated or defendants' good faith. The stop did not morph into a pursuit until it was clear the motorcyclists had seen Officer Ferraro and signaled through their admittedly bizarre conduct they had no intention of stopping. At that point, Officer Ferraro had every right to pursue the motorcyclists under the AG and Clifton Guidelines because they were posing a risk to public safety and eluding as defined in N.J.S.A. 2C:29-2(b), which states:

> Any person, while operating a motor vehicle on any street . . . in this State . . . , who knowingly flees or attempts to elude any police . . . officer after having received any signal from such officer to bring the vehicle . . . to a full stop . . . is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.

It also is not dispositive whether the motorcycle was stolen. The reasons Lovato and his friend eluded police are not elements of the offense and are not a consideration under either set of guidelines. Therefore, the fact Officer Ferraro mentioned the possibility of the motorcycle being stolen after the incident was not a fact having bearing on summary judgment.

In sum, defendants acted in good faith. Their actions did not constitute willful misconduct, were objectively reasonable, and they were entitled to immunity. To the extent we have not addressed an argument raised on appeal,

it is because it lacks sufficient merit to warrant discussion in a written opinion.

R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0363-23